## Ballard County Bank's Assignee, et al. v. U. S. Fidelity and Guaranty Co.

(Decided October 25, 1912.)

Appeal from Ballard Circuit Court.

1. Insurance, Indemnity—Bond—Limitation of Liability—Validity.— An indemnity bond, limiting the insurer's liability to losses occurring and discovered during the continuance of the bond, or any renewal thereof, or within six months thereafter, is not invalid on the ground that it fixes a period of limitation within which actions for fraud or mistake may be brought, different from section 2519, Kentucky Statutes, or on the ground that it is against the public policy of the State.

2.   Same—Pleading.—Where the bond limits an insurer's liability to losses occurring and discovered within a specified time, a petition that does not allege that the loss sustained was discovered within the time fixed is bad on demurrer.

HENDRICK, CRICE & REESOR for appellants.

EATON & BOYD for appellee.

OPINION OF THE COURT BY WILLIAM ROGERS CLAY; COMMISSIONER—Affirming.

This action was brought by E. O. Sexton, as assignee of the Ballard County Bank, and the Ballard County Bank against W. F. Purdy, Jr., and the United States Fidelity and Guaranty Company, to recover on a bond indemnifying the bank against loss at the hands of its cashier, W. F. Purdy, Jr. A demurrer was sustained to the petition as amended, and the petition dismissed. The propriety of this ruling is before us for review. The bond contains the following provision:

"Now therefore, this bond witnesseth, that for the consideration of the premises, the company shall during the term mentioned or any subsequent renewal of such term and subject to the conditions and provisions herein contained, at the expiration of three months after proof satisfactory to the company as hereinafter mentioned, make good and reimburse to the said employer such pecuniary loss as may be sustained by the employer by reason of the fraud or dishonesty of the said employe, in connection with the duty of his office or position, amounting to embezzlement or larceny, and which shall have been committed during the continuance of said term or of any renewal thereof, and discovered during said continuance or of any renewal thereof, or within six months thereafterwards, or within six months after the death, dismissal or retirement of said employe from the service of the employer, within the period of this bond, whichever of these events shall first happen; the company's total liability on account of said employe under this bond or any recovery thereof, not to exceed the sum of $10,000.00."

It appears from the petition that the Ballard County Bank made a general deed of assignment June 5, 1911, to E. O. Sexton. On February 20, 1904, W. F. Purdy, Jr., was the bank's cashier. On that date, the United States Fidelity and Guaranty Company, in considera-

tion of a premium of $30, executed the bond in question for $10,000.00. On February 20, 1905, the bond was renewed for another year upon the same terms and conditions. It was also renewed for the years 1906-7, 1907-8 and 1908-9, the last renewal extending the bond to February 20, 1909. Between February 20, 1904, and February 20, 1909, the cashier, W. F. Purdy, Jr., embezzled various sums of money, aggregating $11,750.84. The petition further charges that the Ballard County Bank did not discover, and by the exercise of ordinary diligence on its part could not have discovered, any of the fraudulent acts of embezzlement on the part of said Purdy until on or about June 5, 1911; that the bank thereupon immediately and at the earliest practicable moment gave notice thereof to the United States Fidelity and Guaranty Company. In the amended petition it is alleged in substance that among the duties to be performed by said Purdy as cashier of said bank, was the keeping of its books, showing the true condition of his accounts as cashier; that he failed to keep his books correctly, but made false entries therein, and so falsely manipulated the books and funds of the bank that the bank's officers and accountants were unavoidably and effectually hindered and prevented from discovering any of his dishonest acts, peculations and defalcations before June 5, 1911.

According to the terms of the bond, the Guaranty Company undertook to indemnify the bank only for such losses as occurred during the continuance of the term of the bond, or any renewal thereof, and discovered during said continuance, or any renewal thereof, or within six months thereafter, or within six months after the death, dismissal or retirement of said Purdy from the service of said bank within the period of the bond, whichever of these events should happen first. It appears from the petition that the last renewal of the bond expired on February 20, 1909, and that the losses occasioned by Purdy's defalcations were not discovered until June 5, 1911, or over two years after the expiration of the last renewal. It follows, therefore, that if the provision of the bond in question, thus limiting the liability of the Guaranty Company, is valid, the petition as amended fails to show any right of recovery. Generally speaking, parties who are *sui juris* have the right to contract as they please, subject to the

limitation that the contract shall not violate any provision of the Constitution of the United States or the State Constitution, or any statute of the State, or be against public policy. It is not contended that the contract violates the provisions of either the Federal or State Constitution. It is insisted that it violates the statutes of this State by fixing a period of limiation different from that fixed by statute, and that it also contravenes the public policy of this State; and that under the authority of Union Central Life Insurance Co. v. Spinks, 119 Ky., 268, the contract is invalid. Section 2515, Kentucky Statutes, is as follows:

"  * * *  an action for relief on the grounds of fraud or mistake, * * * shall be commenced within five years after the cause of action accrued."

Section 2519 is as follows:

"In actions for relief for fraud or mistake, or damages for either, the cause of action shall not be deemed to have accrued until the discovery of the fraud or mistake, but no such action shall be brought ten years after the time of making the contract or the perpetration of the fraud."

It is argued that the provision in the policy relied on by the Guaranty Company, in so far as it limits the time for the discovery of the fraud to six months from the expiration of the bond, is in conflict with section 2519 of the Statutes, and abolishes the right granted by the statute, giving to a party, where the fraud could not have been discovered by the exercise of reasonable diligence, five years after such discovery to bring an action, subject, however, to the limitation that no action shall be brought within ten years after the time of making the contract or the perpetration of the fraud. We fail to see any conflict between the provision of the contract in question and the statute referred to. The bond does not attempt to fix the period in which suit shall be brought. It simply provides for liability for losses occurring and discovered within a certain specified time. If the losses are of the character contemplated by the bond, and occur and are discovered within the time fixed by the bond, then the obligee in the bond may bring his action whenever he pleases, within the limits fixed by the sections, supra. It follows, therefore, that the bond in no sense fixes a period of limitation different from that prescribed by the statute.

Nor can we see any merit in the contention that the bond, in limiting the liability of the Guaranty Company to losses occurring and discovered within a specified time, contravenes the public policy of this State. Public policy is usually understood to be "the principles under which the freedom of contract and private dealing is restricted by law for the good of the community." Thus certain classes of acts are said to be "against public policy," and the law refuses to enforce or recognize them on the ground that they have a mischievous tendency, so as to be injurious to the interests of the State, apart from illegality or immorality. Hope v. Thurman, 111 Ky., 84. There is nothing in the provision in question that has a mischievous tendency or is detrimental to the public good, or in any way injurious to the interests of the State. It was within the power of the parties to contract for a certain liability. This they did. The effect of such a provision in a bond is helpful rather than hurtful. Knowing that no recovery can be had for losses not discovered within the time fixed by the bond, the bond itself is an incentive to the officers of the bank to do their duty by making frequent and careful examinations of the accounts of its employes. Similar provisions to the one in question have been upheld by the courts, and it is well settled that where the liability of the insurer is limited to losses discovered within a specified time, there is no liability unless the fraud, dishonesty or negligence, causing the loss, not only occurred but was discovered within the time limit. The American Surety Co. v. Pauly, 170 U. S., 133; American Surety Co. v. Pauly, 170 U. S., 160; New York Fidelity Co. v. Consolidated National Bank, 71 Fed., 116; The Guaranty Co. of N. A. v. Mechanics Savings Bank & Trust Co., 80 Fed., 766; Proctor Coal Co. v. U. S. Fidelity & Guaranty Co., 134 Fed., 434; California Savings Bank v. American Surety Co., 82 Feb., 866; DeJernette v. Fidelity & Casualty Co., 98 Ky., 558.

In the last mentioned case, this court said:

"By the express terms of the policy 'within three months after such discovery as aforesaid, and within three months after the expiration of this bond, the employer shall give full particulars of any claim under the bond to the company.' This was not done for more than three months after the expiration of the renewal

of the bond, and for more than one year after the expiration of the bond. The company desires by these provisions to require vigilance on the part of the employer to discover and give notice of the fraud or dishonesty of the employed. It was to the utmost importance that this be done. The company could protect itself to some extent by having such information. It required and had the right to expect vigilance on the part of the employer.''

In the same connection the court used the following language:

''The language in the bond, which reads as follows: 'That any claim made under this bond or any renewal thereof, shall embrace and cover only for acts and defaults committed during its currency, and within twelve months next before the discovery of the acts or default upon which said claim is based;' means to limit the company's liability for acts committed during the period covered by the bond, or one covered by a renewal thereof, which were committed within twelve months before the date of the discovery. Under the terms of the bond the discovery must be made within three months after the expiration of the contract, during the currency of which the act was committed.''

The case at bar does not differ in principle from the above case.

Judgment affirmed.