# Kirwan's Administrator v. Citizens' Union National Bank.

(Decided November 25, 1927.)

## Appeal from Jefferson Circuit Court (Common Pleas, Fourth Division).

1. Warehousemen.—Agreement between joint lessees of deposit box and bank, providing that either of lessees might enter box, and, in the event of death of either, survivor might continue to enter the box without responsibility on the part of the bank, could not be modified, nor custody or location of the contents of the box changed by the bank, or by one lessee and the bank, without the assent of the other lessee.

2. Contracts.—It is the general policy of the law to permit great freedom of contract between individuals, and a private contract will not be declared to be against "public policy," unless it is of such a nature that it is injurious to public welfare; "public policy" being defined as the principle under which the freedom of contract and private dealing is restricted by law for the good of the community.

3. Warehousemen.—Contract between sisters, lessees of deposit box, and bank, providing that the surviving lessee might continue to enter the box after the death of the other without any responsibility on the part of the bank, held not against public policy in action by administrator of deceased lessee to recover from bank value of contents taken from box by other lessee after testator's death.

DAVID R. CASTLEMAN and GROVER SALES for appellant.

WILLIAM MARSHALL BULLITT and LEO. T. WOLFORD for appellee.

OPINION OF THE COURT BY TURNER, COMMISSIONER— Affirming.

Appellant's intestate, Mae Lee Kirwan, a widow, died in Louisville on October 17, 1923.

In January, 1921, she had in her own name rented from the Citizens' Union Fourth Street Bank in Louisville a safety deposit box. She had a sister, Katie E. Lee, who resided in California, and in April, 1921, while that sister was on an extended visit to her in Louisville, she relinquished the key to the box rented in January, and she and her sister Katie E. Lee jointly rented another box from the same institution, and at the time en-

tered into as between themselves and the bank the following written agreement:

"Louisville, Ky., April 5, 1921.

"I this day associate with me Mrs. Katie E. Lee as a joint owner in box numbered 3604. Either of us may enter same. In the event of the death of either, the survivor may continue to enter the box without any responsibility on the part of the Citizens' Union Fourth Street Bank."

Mrs. Kirwan and Mrs. Lee each signed this agreement, which was left in the custody of the bank, and at the same time a key to the safety deposit box was delivered to each of them.

While still in Louisville on the extended visit to her sister, Mrs. Lee accompanied Mrs. Kirwan upon two or more occasions when they visited and opened their joint box, but it is not made clear whether Mrs. Lee ever actually deposited any of her own belongings in the box. After so long a time Mrs. Lee returned to her home in California, still having in custody her key to the deposit box.

In September, 1923, Mrs. Kirwan was taken to a hospital in Louisville. While in the hospital, and on the 29th of September, 1923, she sent to an officer of the bank the following note:

"Louisville, Ky., September 29, 1923.

"Mr. Ament: I hereby order you to take my vault key to my box and before Mrs. Elsie Sandidge take charge of the whole of my bonds as you gave Mrs. Sandidge the right to take charge of those four yesterday. They will not let me out of here now, and this is my last request of you. I would have things different if I could now.

Mrs. Mae Lee Kirwan."

It appears from the evidence that the Mrs. Sandidge referred to in that note had been by mutual agreement given custody of certain bonds taken from the box for the purpose of bearing the expense it was thought would be incurred by Mrs. Kirwan while in the hospital. It may be inferred from the note as a whole that the writer not only suspected that she would not leave the hospital alive, but had some indefinable idea about changing the custody or location of the bonds that were in the box.

While she expresses the wish to "have things different if I could now," there is nothing to indicate how she would have changed the situation, but, on the contrary, it seems to have been her idea that she could not then have changed the situation if she tried. The original agreement was between the bank, her and her sister, each with the other two, and plainly she recognized the fact that she and the bank alone could not change the existing agreement between the three without the assent of her sister who was then in California. Clearly, therefore, the bank, even if this note might be interpreted as a warning of any kind, had no power without increasing its liability to Mrs. Lee to modify or change the existing agreement between the three in any respect, or to change the custody or location of the contents of the box. Accordingly, the bank declined to open the box, or to modify the existing status.

On the 17th of October Mrs. Kirwan died at the hospital, and at the time there were $7,200 in Liberty bonds in the box, and some few personal trinkets besides, the value of which is not made clear. A wire was sent to her sister on the day of her death, and on the 22d of October Mrs. Lee appeared in Louisville. There had been no administration upon the estate, and it was not even known at that time whether Mrs. Kirwan had left a will.

Between April, 1921, when the last deposit box was rented by Mrs. Kirwan and Mrs. Lee jointly, and the date of the death of Mrs. Kirwan, the Citizens' Union Fourth Street Bank was consolidated with the appellee Citizens' Union National Bank, and the latter had assumed the liabilities, and taken over the contracts and assets, of the Fourth Street Bank.

Accordingly, on the 23d of October, Mrs. Lee, Mrs. Sandidge, and an attorney employed by Mrs. Lee, together with another who had agreed, at their suggestion, to qualify as administrator, went to the appellee bank after conference with the county judge to look over the papers in the box and ascertain whether or not Mrs. Kirwan had left a will. Mrs. Lee had her key, and signed the register, and under the contract she was given access to the box, which was opened, and its contents gone over by the four who were present. There is some controversy as to whether Mrs. Lee at that time carried away the $7,200 in Liberty bonds and the remaining contents of the box, or whether she, at a subsequent visit to

the box on that same day, when accompanied only by Mrs. Sandidge, did so; but it is certain that upon one or the other of these occasions she did carry the bonds and other things away with her.

At that time there had been no administration upon the estate, but two days thereafter the appellant Levy qualified as administrator of Mrs. Kirwan's estate.

This is an action by the administrator against the appellee bank seeking to recover the value of the contents of the box from it, upon the theory that the writing signed by Mrs. Kirwan and Mrs. Lee, in so far as it gave to the latter access to the box after the death of Mrs. Kirwan, was null and void, and contrary to public policy, and in violation of the rights of creditors; and that defendant, in permitting Mrs. Lee access to the box after the death of Mrs. Kirwan, acted without authority, and was grossly negligent. It is alleged that all the contents of the box belonged to Mrs. Kirwan, and that such fact was known to the officers of the bank, and the action is based upon the theory that, after Mrs. Kirwan's death, the bank had no right to permit any other than her personal representative access to the box.

The answer in the first paragraph denied some of the material allegations of the petition, and put in issue the conclusions of law drawn therefrom.

In the second paragraph it relied upon the contract quoted as a complete protection from liability to the plaintiff. Other defenses were made, but for the purposes of this opinion they need not be discussed.

The trial court sustained a demurrer to the second paragraph of the answer, and a trial was had upon other issues made, and the jury returned a verdict for the defendant.

While several questions are discussed in the briefs, our conclusion that the second paragraph presented a complete defense, and that defendant was entitled on the trial to the directed verdict for which it asked, obviates the necessity of discussing any but that question; for, whatever other error may have been made by the trial court, if it should have given the directed verdict, the judgment must be affirmed.

The contract between the three was clear, explicit, and not subject to misinterpretation. The two women, who were sisters, and the bank constituted the contracting parties; they were each contracting with the other

two, the two sisters expressly providing for joint access to the box, each agreeing with the other, and the bank agreeing with them both, that they should have such access, and they were each given keys to the box in accordance with that agreement. The agreement for access by the survivor after the death of the other was a part of the contract, and, so far as this record discloses, may have been an agreement between the sisters that the survivor should have the property of the other that might be in the box at the death of the first; and the fact that Mrs. Kirwan obviously contemplated death while at the hospital, and at the same time made no will, at least gives color to the theory that there was some such agreement.

The only question necessary to pass upon is whether this contract giving to the survivor between the two sisters the right of access to the box, after the death of the other, is against public policy. A contract between individuals can only be said to be against public policy, when, apart from its illegality or immorality, it is of such nature that it has a tendency to be injurious to the interests of the public, and the courts will ordinarily act with great caution in declaring such contracts to be invalid. Public policy has been declared to be "the principles under which the freedom of contract and private dealing is restricted by law for the good of the community," and such public policy is expressed in the state's Constitution, its statutes, and in its common-law rules as defined by its court of last resort. Ballard Co. Bank Assignee v. U. S. Fidelity Guaranty Co., 150 Ky. 236, 150 S. W. 1, Ann. Cas., 1914C, 1208; Chreste v. Louisville R. R. Co., 167 Ky. 75, 180 S. W. 49, L. R. A. 1917B, 1123, Ann. Cas. 1917C, 867; Hall Mfg. Co. v. Western Steel & Iron Works (C. C. A.) 227 F. 588, L. R. A. 1916C, 620.

It is the general policy of the law to permit great freedom of contract between individuals, and private transactions involved in such contracts will not be declared invalid as against public policy, in the absence of some apparent injury to the public welfare. Diamond Match Co. v. Roeber, 106 N. Y. 473, 13 N. E. 419, 60 Am. Rep. 464; 2 Page on Contracts, sec. 678.

In the light of these general and well-recognized principles of law, and in the light of the general policy to permit freedom of contract between individuals where

the public interest is not clearly violated, we fail to see that the contract in question is against any public policy of this state. It was only a contract, in its final analysis, by which two sisters, either in the interest of economy, or for other impelling personal reasons known to them, jointly rented a safety deposit box, and entered into an agreement by which the survivor might have access to that box, and the bank controlling the deposit box was a party to that agreement. No duty rested upon the bank under the terms of the contract to protect the contents of the box from Mrs. Lee, and the contract being valid, and the bank, having done that which it had a right to do, was not liable.

It results that the court erred against appellee in sustaining the demurrer to the second paragraph of the answer, and consequently erred in not sustaining appellee's motion for a directed verdict.

Judgment affirmed.