[Civ. No. 8456. First Appellate District, Division Two.—June 17, 1933.]

CHURCHILL TAYLOR, Appellant, v. V. E. DE CAMP et al., Defendants; CHARLES H. DICKINSON et al., Respondents.

S. Laz Lansburgh and S. Joseph Theisen for Appellant.

Joseph G. De Forest and Howard S. Lewis for Respondents.

NOURSE, P. J.—Plaintiff sued as the assignee of the State Assurance Company, Ltd., to recover premiums from The General Agency, a partnership, its agent, and joined the American Surety Company on its bond assuring the fidelity of the agency. The cause was tried with a jury, which returned a verdict against The General Agency and V. E. De Camp and L. P. Swayne Companies as partners therein and against the American Surety Company, but in favor of the defendant Charles H. Dickinson. Thereafter the trial court granted a new trial as to the American Surety Company on the ground that the evidence was insufficient to support the verdict. Plaintiff appealed from the portion of the judgment on the verdict in favor of defendant Dickinson and also from the order granting a new trial to the American Surety Company. The appeal is taken on typewritten transcripts.

The plaintiff's assignor employed The General Agency to solicit and issue fire and automobile insurance policies, collect premiums thereon and to generally exercise the powers usually given an insurance agency. The contract reserved to the employer the right to decline any business offered and to cancel policies which it considered undesirable. It required the agency to make periodic remittances of the net premiums to the insurance company within seventy-five days from the end of the month in which the business was written. Acting under the terms of the contract the agency sold a considerable amount of insurance, deposited the premiums collected thereon in a bank account under the name of The General Agency, and from time to time made remittances to its employer through checks of The General Agency. Disputes arose as to the character of some

of the business written by the agent and a large number of policies were canceled by the employer either directly or by the agent acting upon orders of its employer. On February 25, 1926, the employer, exercising the power given in the contract, directed the agent to cease from writing any further business. At the same time the agent was directed to keep its offices open for the purpose of winding up the business, i. e., to collect premiums outstanding and to refund unearned premiums upon the canceled policies. When the suit was filed the plaintiff claimed that the agent owed on the contract a sum in excess of $9,000. The defendant De Camp, who at all times was in active charge and control of the affairs of the agency, defended on the grounds, first, that acting in good faith under the contract the agency had expended a large sum of money in the establishment and maintenance of offices in San Francisco and Los Angeles for the use and benefit of its employer, and second, that it was prevented from making collections of premiums because of the employer's wrongful and malicious cancellation of business written by the agent. The defendant Dickinson answered separately, denying that he was at any time a member of the partnership doing business under the name of The General Agency and denying that he was at any time a member of a partnership doing business under the name of L. P. Swayne Company. The L. P. Swayne Companies, a corporation, filed a separate answer denying that Dickinson and L. P. Swayne individually were copartners with De Camp doing business under the name of The General Agency. The American Surety Company admitted the execution of the surety bond and specially raised the issue that its liability was limited for loss sustained by the State Assurance Company, because of "any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication of funds on the part of said The General Agency".

Upon the issues so framed the plaintiff tendered proof upon the composition of the partnership doing business under the name of The General Agency through which it sought to hold Dickinson as a partner. Evidence was also offered of a document signed by Dickinson wherein he agreed to hold the surety company harmless against any loss which the company might suffer under its bond and

evidence that Dickinson was the owner of one-half of the stock in the corporation sued as L. P. Swayne Companies. No evidence was offered tending to prove that the loss was the result of fraud, dishonesty or wilful misapplication on the part of the employee.

The jury having returned its verdict in favor of the defendant Dickinson we must consider the appeal from that portion of the judgment in the light of a finding against the evidence produced by the plaintiff in reference to that defendant. On this appeal the appellant seeks to charge Dickinson upon three different theories. First, as a partner in The General Agency; second, as an indemnitor of the surety company, and third, upon his statutory stockholder's liability.

■ The only evidence which the plaintiff offered tending to prove that Dickinson was personally a partner in The General Agency was the conclusion of the witness De Camp. This testimony was contradicted in so many different ways that it is unnecessary to say more at this time than that the evidence demonstrated that that partnership was composed of De Camp and the L. P. Swayne Companies, a corporation, and that Dickinson was a stockholder in the latter corporation, but that he at no time participated as an individual in the business of the partnership. The uncorroborated statement of De Camp that Dickinson was a partner does not create a substantial conflict with the undisputed evidence which shows the exact composition of the partnership. The finding of the jury on this issue was supported by all the competent evidence and cannot be disturbed.

■ The undertaking which Dickinson gave to the surety company was to pay the surety company all loss "which it may sustain or incur, or for which it may become liable by reason of having executed said bond. . . . " This was not an undertaking to pay the original debt or for the performance of the obligation; it was merely an undertaking to repay to the surety such sum as the surety might be compelled to pay by reason of its obligation. Hence there could be no breach of Dickinson's bond until the surety had paid something on its bond. The bond of Dickinson was not, therefore, one for the benefit of the creditor upon which the creditor might sue within the rule declared in section

2854 of the Civil Code. (13 Cal. Jur., p. 1003; *Goff* v. *Ladd,* 161 Cal. 257, 259 [118 Pac. 792].)

■ The appellant cannot urge the stockholder's liability of Dickinson because he did not tender that issue to the trial court. The complaint alleged that De Camp, Dickinson, Lawrence P. Swayne and John Doe were copartners doing business under the name of The General Agency. It also alleged that L. P. Swayne *Companies* was a corporation. It then alleged that De Camp, Dickinson, Swayne and others "were copartners doing business under the name of L. P. Swayne *Company*". It then alleged that all the defendants other than the surety company were partners doing business under the name of The General Agency. This allegation was concealed in the third cause of action and was repudiated by appellant when the evidence was tendered to the jury. Throughout the trial appellant contended that The General Agency was a partnership composed of De Camp, L. P. Swayne, and Dickinson. Dickinson contended that the partnership was composed of De Camp and the L. P. Swayne Companies, a corporation. The appellant controverted this evidence and now, for the first time, takes the position that it was a fact admitted in the pleadings. The jury returned its verdict against De Camp, "L. P. Swayne Companies" and The General Agency. By this the jury meant the L. P. Swayne Companies, a corporation; but there was no cause of action stated against that corporation except that based on the surety bond and pleaded in the third count and hence no cause against Dickinson as a stockholder therein. The fourth count is but a skeleton of a pleading which does not begin to state facts upon which a stockholder's liability could be enforced under the code sections then controlling.

■ The appeal from the order granting a new trial to the surety company does not present any difficulty. The bond upon which appellant relies undertook to pay any pecuniary loss which the employer might sustain "by any act or acts of fraud, dishonesty, forgery, theft, embezzlement, wrongful abstraction or wilful misapplication of fund.: on the part of said The General Agency". There was no evidence of any nature tending to prove that loss was sustained through any one of these acts and of course the burden was upon the appellant to prove that he came

within the terms of the bond. In his opening brief the appellant discussed the rules of law applicable, but did not print any evidence in support of the issue. This respondent challenged the appellant to show any evidence showing fraud, wrongful abstraction or wilful misapplication of any funds by The General Agency and directed our attention to the evidence of the course of business of the employer and the employee which it claims negatives any inference of dishonesty in the handling of the funds by The General Agency and placed the parties in the simple relation of debtor and creditor. The appellant ignores the challenge in his reply brief and again fails to give us any reference to any evidence which tends to support this issue. At great length he argues that the agency mingled with its own funds premiums collected for its principal and used those funds in furthering its own business. But there is no evidence supporting either claim. ▆ In one portion of his brief appellant relies on the opening statement of counsel for Dickinson as evidence of these facts. At that time counsel said: ''The evidence I think will show . . . that the entire efforts of The General Agency were devoted toward furthering the interests of The State Assurance Company, . . . and that every dollar that was taken in from any source whatsoever was spent, not in speculation, . . . but actually spent in furthering the business of The General Agency, and also the business of The General Agency . . . was the business of The State Assurance Company.'' Though this statement of counsel was not binding upon the surety company, it nevertheless falls far short of being evidence of fraud, misappropriation, or misapplication of funds on the part of The General Agency.

There is nothing which we have found in the record which discloses more than a common relation of debtor and creditor between the parties. The bond was not given to guarantee full performance by the agency under the contract. It was a bond of limited liability, limited to loss through fraud or similar acts. ▆ Fraud is not to be presumed, but, on the contrary, the presumption is against fraud. The authorities uniformly hold that there is no liability under a bond of this character in absence of proof of the acts designated in the bond (25 C. J. 1093, 1094). As there was no proof to support the verdict against the

surety company the trial court properly granted its motion for a new trial.

The judgment and order are both affirmed.

Sturtevant, J., concurred.

A petition by appellant to have the cause heard in the Supreme Court, after judgment in the District Court of Appeal, was denied by the Supreme Court on August 14, 1933.