## Home Owned Stores, Inc., v. Standard Accident Insurance Company.

(Decided Nov. 23, 1934.)

SAMUEL B. KIRBY, Jr., for appellant.

HUFFAKER, HOGAN & BERRY for appellee.

OPINION OF THE COURT BY JUDGE THOMAS—Affirming.

On January 2, 1930, the appellee and defendant below, Standard Accident Insurance Company, issued to the appellant and plaintiff below, Home Owned Stores, Incorporated, a fidelity policy or bond by which it, in consideration of the premium paid by the insured, indemnified it against loss sustained "through any act of fraud, dishonesty, forgery, theft, larceny, embezzlement, misappropriation, wrongful abstraction or willful misapplication committed" by certain named employees of the insured, whether perpetrated alone or in collusion with others during the life of the policy, which was one year from date. On that same day plaintiff employed one William Otis Lykins (whose fidelity the bond covered), and put him in charge of one of its general retail grocery stores located at Swan and Mary streets in the city of Louisville, which position he held until May 5 thereafter, when plaintiff discontinued the operation of all of its chain stores and sold them to another or others. Upon a final check up it was found that the store operated by Lykins, according to the records he kept and furnished to plaintiff, was short to the amount of $504.30, and this action was filed by plaintiff in the Jefferson circuit court against defendant on July 6, 1932, to recover that amount.

Defendant's answer admitted the execution of the bond, but denied other material facts charged in the petition as grounds for recovery, and also pleaded in other paragraphs that plaintiff did not give it the prescribed notice contained in the policy or bond of its alleged cause of action; and, secondly, that in violation of a provision in the bond it failed to notify defendant of its discovery of shortages in the business being conducted by Lykins before his employment was terminated by the sale of the store operated by him. That provision says: "That said bond shall terminate as to any employee [including Lykins] * * * upon discovery by the employer of any act which may be made the basis

of any claim hereunder." Another one is: "The employer shall give notice, by registered mail, to the surety at its home office, Detroit, Michigan, as soon as practicable after becoming aware of any act committed by any Employee, which may be made the basis of claim hereunder," and in the paragraph pleading such defense it was alleged and admitted by plaintiff that there was some shortage in the accounts of Lykins at the end of January, 1930, and that in subsequent months before the termination of his employment there were others, and that plaintiff never notified defendant of any of them. Following pleadings, demurrers, and motions made the issues, and upon trial, the court at the conclusion of plaintiff's testimony directed a verdict for defendant, followed by judgment dismissing plaintiff's petition, and its motion for a new trial having been overruled, it prosecutes this appeal.

The bond or policy, as we have stated, provided for notice to defendant in a prescribed form before the right of action accrued, and which we think the evidence shows was not given, nor was it waived. Furthermore, the intermediate shortages occurring during the successive months of the employment of Lykins are of the same type and character, and, if they were such as the bond covered (as plaintiff contends they were), it was then its duty upon discovery of each of them to notify defendant when it had the right to settle therefor if liable and to cancel its contract. However, as we have seen, no notice was given, and for that reason also it would seem that plaintiff could not maintain this action. Authorities sustaining the defense of a failure to give notice of defalcation are, Connecticut Mutual Life Insurance Co. v. Scott, 81 Ky. 540; Ballard County Bank's Assignee v. U. S. Fidelity & Guaranty Co., 150 Ky. 236, 150 S. W. 1, Ann. Cas. 1914C, 1208; U. S. Fidelity & Guaranty Co. v. Citizens' National Bank, 147 Ky. 285, 143 S. W. 997; Southern Surety Co. of New York v. Heyburn, 234 Ky. 739, 29 S. W. (2d) 6, and cases therein cited. But plaintiff seeks to avoid such defense upon the ground that neither the bond (or policy) nor any principle of adjudged law required it to notify defendant of mere suspicious acts on the part of the indemnified employee, and which is in the face of the fact that all of the defalcations for which it seeks recovery in this action were of the same type and character, and, if they were only suspicious facts not requiring notice thereof

to defendant and as not establishing liability under the bond, then all of the items of its claim rest upon the same character of suspicions, and which we think, as hereinafter shown, is correct.

But, independently of such defenses, we have concluded that the proof introduced by plaintiff failed to bring any of the aggregate shortage, composing the amount sued for, within the terms of the bond, and for that reason alone the court did not err in directing the verdict in favor of defendant followed by dismissing the petition. It is a universal rule that the burden to sustain this character of action is upon plaintiff, since fraud, dishonesty, or other immoral act against which the bond indemnifies plaintiff will not be presumed. The general rule measuring the liability of an indemnitor in cases like this is thus stated in the text of 25 C. J. 1093: "Where, as is usual, a fidelity policy or bond covers only losses due to fraud or dishonesty, or occasioned by larceny or embezzlement, the liability of the insurer is restricted to claims based upon such grounds, and his obligation does not cover every liability or claim which may accrue in favor of the employer and against the employee. Thus a loss resulting from the employee's carelessness or inattention to business, or other acts or omissions not fraudulent or dishonest, imposes no liability on the insurer."

An exhaustive discussion of the question is given in a lengthy annotation to the case of Salley v. Globe Indemnity Co. reported in 133 S. C. 342, 131 S. E. 616, 43 A. L. R. 971, the annotation beginning on page 977. On page 984 of 43 A. L. R. is the subdivision of the annotation especially applicable to this character of case, which is given under the heading of "Under stipulation for indemnity against loss by particular acts." The beginning statement under that heading says: "A fidelity bond indemnifying against loss by any act of fraud or dishonesty on the part of the bonded employee covers only acts of fraud or dishonesty," and in substantiation thereof the case of U. S. Fidelity & Guaranty Co. v. Merkley, 65 S. W. 614, 23 Ky. Law Rep. 1570, is cited. During the course of that discussion, the annotator points out that the fraud and dishonesty insured against need not necessarily amount to a crime, nor need it be proven in this kind of case "beyond a reasonable doubt." But the entire tenor of the law, as therein disclosed, is to the effect that the covered defalcations of

the employee under language such as we have here (and contained in the bond sued on) must result from something more than mere carelessness or inefficiency of the employee. In other words, that the defalcations, in order to be recoverable under such limitations, must emanate from some moral turpitude on the part of the employee, and which, though capable of proof by circumstances, will not ordinarily be presumed from the mere fact of the loss or shortage, unless there is testimony that it could not have reasonably happened except for some dishonest act on the part of the employee.

The proof introduced by plaintiff showed that the stock of goods was invoiced to Lykins when he took charge; that, except on busy occasions, which included all Saturdays and perhaps some other days, he operated the store by himself. He was also presumed to keep a correct account of his sales and report the amount thereof each day, which he did. He constantly received replenishments to the stock as was demanded by the trade, and he, as well as the central office, kept an account of the amounts of them. He was also presumed to correctly report all spoilage of goods and to receive credit therefor. Likewise it was his duty to keep an account of all goods sold on special price days below the amount with which he was charged therefor and to receive credit by the difference. He was only about 23 years of age, and to perform his duties as manager of the store and to keep an account of such matters and perhaps others not only made him a very busy person during the hours that the store was open for patronage but likewise required more or less knowledge of bookkeeping, and it is not at all improbable that mistakes may have been made so as to create a part, if not all, of the shortage sought to be recovered. Moreover, on the busy days referred to, there were one or more clerks assisting him in operating the store, and they had, so far as the proof shows, as much opportunity to practice dishonesty as did Lykins himself. So that all we have is that at the end of his employment, according to the books he and his employer kept, he was short in his accounts to the amount sought to be recovered, when, as we have pointed out, there were and are many reasons to believe that the shortage was produced in other ways, or by dishonesty of others, than by his fraud or dishonesty, or any other immoral act on his part embraced by the provisions of the bond.

Further evidencing that conclusion are the two admitted facts that Mr. Vaughn, the chief owner and general manager of plaintiff, consented to and did pay Lykins, upon the ceasing of his employment and after the shortage sued for was known, his past-due salary, and later recommended him to another as worthy of employment. Such acts on his part were voluntary and without compulsion, and are strongly indicative of his appraisement of the facts and circumstances surrounding the shortage, and negatives the idea that he at the time believed that any of it was due to fraud, dishonesty, or other immoral conduct on the part of his insured employee. We could cite many other cases as well as texts supporting the principles that we have stated, but it is entirely unnecessary, since they are well settled and of universal application. The reasons for their adoption could also be stated, but it is likewise unnecessary, since such information may be obtained by consulting the cases cited, and, after all, we are concerned about and controlled by the declarations of the law as made, and not by the reasons given therefor.

We therefore conclude that the judgment was proper, and it is affirmed.