No. 33,288

The Aetna Building and Loan Association, *Appellant,* v. Central Surety and Insurance Corporation, *Appellee.*

(66 P. 2d 577)

Opinion filed April 10, 1937.

*John S. Dean, John S. Dean, Jr.,* and *Mark L. Bennett,* all of Topeka, for the appellant.

*Irwin Snattinger, Hugh T. Fisher,* both of Topeka, *H. L. McCune, H. M. Noble, Lynn Webb* and *R. S. Eastin,* all of Kansas City, Mo., for the appellee.

The opinion of the court was delivered by

ALLEN, J.: This was an action against the defendant, a surety company, upon a surety bond issued by the defendant to secure the plaintiff against loss through the conduct of an agent of the plaintiff. The court rendered judgment for the defendant, and plaintiff appeals.

The bond was dated October 1, 1930, and indemnified the plaintiff in the sum of one thousand dollars for any loss of money, securities or other personal property sustained by reason of "any act or acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or willful misapplication" on the part of the agent.

The case was tried by the court, and upon request, findings of fact and conclusions of law were made by the court. The findings of fact may be summarized as follows:

The plaintiff, the Aetna Building and Loan Association, from the year 1916 to 1934, had borrowers and investors in and about Tishomingo, Okla., who were making payments of interest and dues. In 1916 the plaintiff orally appointed C. H. Holland as its agent to collect such interest and dues and each month to remit the same to the home office of plaintiff at Topeka, Kan.

As stated, on October 1, 1930, the bond in this lawsuit was executed by the defendant. The agent, C. H. Holland, conducted a general insurance business, his operations from 1916 to 1928 being under the name of "C. H. Holland, Agent." In 1928 Holland's health became impaired and he suffered financial reverses. As a result, he turned the business agency over to his son, John Holland, who ran the business until 1929, when it was turned over to John's sister, Janie Martin, the daughter of C. H. Holland. In January, 1931, C. H. Holland was appointed custodian of the state house at Oklahoma City, Okla. He then left Tishomingo and did not return between 1931 and 1934, except for occasional week-end visits, and during that time did not personally transact any business as agent for the plaintiff. While no definite notice was given the plaintiff when the change was made in the transactions of the Tishomingo agency in 1928, plaintiff did know from its representatives who worked Tishomingo that from 1928 to 1931 C. H. Holland was devoting only a part of his time to the business of the plaintiff and that Janie Martin was making a part of the collections due the plaintiff. After C. H. Holland went to Oklahoma City plaintiff knew he was not personally transacting its business there, and that his daughter, Janie Martin, was actually making the collections and making the remittances.

The court further found that the agent, C. H. Holland, did not during 1932 or 1933 collect any money belonging to plaintiff, and did not willfully misapply the funds collected for plaintiff to his own

use, and that he was not guilty of any act of fraud or dishonesty, nor did he receive or misappropriate any money belonging to the plaintiff.

As there was ample evidence to support the findings of fact as set forth above, the only question is whether under the facts there is any liability under the terms of the bond.

In *Flour Co. v. Surety Co.*, 98 Kan. 618, 158 Pac. 1118, this court was called upon to construe a surety bond containing the same language as contained in this bond. It was there said:

"All the words used should be considered as employed for a purpose, and the collocation should be taken into account in arriving at their meaning. So considered it is plain the purpose of the bond was to cover all kinds of depravity."

The contract of indemnity in the case at bar covers only such loss of money or property as may be sustained by any acts of fraud, dishonesty, forgery, embezzlement, wrongful abstraction or willful misapplication on the part of the agent. These acts involve moral turpitude. The contract sued on was one of limited liability. It was not intended to cover every claim or liability that might arise out of the agency. The agent by his carelessness or negligence might incur a loss for which he would be liable to the plaintiff, but which would impose no liability on the defendant under the terms of the bond here in suit. Mere failure to pay an obligation is not fraud or dishonesty under this contract. Such is the uniform holding of the authorities.

In *Home Owned Stores, Inc., v. St. Acc. Ins. Co.*, 256 Ky. 482, 76 S. W. 2d 273, where the court was confronted with a similar question, it was said:

"The entire tenor of the law . . . is to the effect that the covered defalcations of the employee under language such as we have here (and contained in the bond sued on) must result from something more than mere carelessness or inefficiency of the employee. In other words, that the defalcations, in order to be recoverable under such limitations, must emanate from some *moral turpitude* on the part of the employee, and which, though capable of proof by circumstances, will not ordinarily be presumed from the mere fact of the loss or shortage, unless there is testimony that it could not have reasonably happened except for some dishonest act on the part of the employee." (Italics inserted.) (p. 485.)

In *Taylor v. De Camp*, 132 Cal. App. 640, 23 P. 2d 61, the bond was similar to the bond herein sued on. There the court said:

"There is nothing which we have found in the record which discloses more than a common relation of debtor and creditor between the parties. The

bond was not given to guarantee full performance by the agency under the contract. It was a bond of limited liability, limited to loss through fraud or similar acts. Fraud is not to be presumed, but, on the contrary, the presumption is against fraud. The authorities uniformly hold that there is no liability under a bond of this character, in absence of proof of the acts designated in the bond. (25 C. J. 1093, 1094.) As there was no proof to support the verdict against the surety company, the trial court properly granted its motion for a new trial." (p. 646.)

See, also, *Monongahela Coal Co. v. Fidelity & Deposit Co.*, 94 Fed. 732; *Greenbrier Laundry Co. v. Fidelity & Casualty Co.*, 114 W. Va. 185, 171 S. E. 409; *Rhode Island Mut. Liability Ins. Co. v. Pierce*, (R. I.) 171 Atl. 243; *Sinclair & Co. v. Surety Co.*, 132 Ia. 549, 107 N. W. 184.

Plaintiff urges that this case is controlled by *Milling Co. v. Surety Co.*, 104 Kan. 790, 180 Pac. 782. In that case the trial court found that the agent to whom the goods were consigned was guilty of acts and defaults that amounted to embezzlement, and that judgment was affirmed by this court.

In that case flour and feed were sent to one Stuckey, who was to sell the goods and remit the proceeds. The bond bound the surety company to make good any pecuniary loss which the plaintiff might sustain by reason of the fraud or dishonesty of Stuckey in connection with the business amounting to embezzlement or larceny. The court said:

"There is a further contention that the failure of Stuckey to account for plaintiff's property or to remit the proceeds of the same did not amount to larceny or embezzlement. It having been held that he was acting in the capacity of an agent or employee in the care and disposition of plaintiff's flour and feed, the failure to account for the plaintiff's money and property constituted personal dishonesty, which amounted to embezzlement. It is true, as contended by plaintiff, that the guaranty of the defendant did not cover a mere default in the payment of a debt, as for money advanced or loaned by the plaintiff to the agent, or for so much of the proceeds of the sales as Stuckey had a right to retain for his commission. (*Hail Association v. Surety Co.*, 97 Kan. 271, 155 Pac. 13.) Here the plaintiff was not asking indemnity for the failure of Stuckey to pay an indebtedness nor for the withholding of the commission to which he was entitled, but for the property and money of the plaintiff with which he was entrusted, and which he had fraudulently appropriated to his own use. In the bond the defendant undertook to reimburse the plaintiff for any pecuniary loss which it might sustain by reason of the fraud or dishonesty of the agent in connection with the duties and obligations of his position, and in withholding the property and money of the plaintiff, and the fraudulent appropriation of the same to his

own use, he violated his duty and obligation to the plaintiff, which substantially amounted to embezzlement and constituted a manifest breach of the fidelity bond." (p. 792.)

In that case it was clear that the agent had collected money and had made a fraudulent appropriation of the same to his own use. In the case at bar, under the findings of fact as returned by the court and by which we are concluded, the agent was not guilty of any acts of fraud or dishonesty, neither did he receive or appropriate any money belonging to the company to his own use. Under the facts, therefore, the milling company case is not in point.

The bond sued on in this case guaranteed the honesty of the agent, C. H. Holland, but did not undertake to indemnify the plaintiff for the dishonest acts of some other person. The court found that the plaintiff knew from its representatives who worked Tishomingo that from 1928 to 1931 the agent, Holland, was devoting only a. part of his time to the business of the plaintiff. The court further found that from 1931, when Holland left Tishomingo for Oklahoma City, he was not personally transacting plaintiff's business there, but had turned over the business to his daughter, Janie Martin, who was looking after the collections and making remittances to the plaintiff. From these and other circumstances which appear in the record it might well be argued that the agency of Holland was terminated, and that Janie Martin was recognized as the agent of the plaintiff at Tishomingo. If so, the defendant would be discharged. (*Dupee v. Blake*, 148 Ill. 453, 35 N. E. 867; *New Amsterdam Casualty Co. v. Basic Building & Loan Ass'n*, 60 F. 2d 950.) Doubtless the bond was written because of the confidence the defendant had in the integrity, prudence and business ability of Holland. It cannot be presumed that it intended to underwrite these qualities in some unknown substituted person.

The judgment is affirmed.