STATE ex rel. ELSEY v. SILVERTHORN et al.

No. 31490. Sept. 18, 1945.

*161 P. 2d 858.*

W. L. Johnson, of Chandler, for plaintiff in error.

M. A. Cox, William A. Vassar, Embry & Sutton, Walter F. Hill, and Walter G. Wilson, all of Chandler, for defendants in error.

J. I. Gibson, for defendant in error D. L. Gibson.

HURST, V. C. J. This action was commenced by the plaintiff, State of Oklahoma ex rel. D. P. Elsey, against the defendants, S. U. Silverthorn, county treasurer, Oliver Ingenthron, Jerome Leder and Bert Satterfield, county commissioners, Frank McVey, county attorney, D. L. Gibson, Maybel Karsner, and Flora Graves. It was dismissed as to McVey. The suit is prosecuted under 62 O. S. 1941 §§ 372, 373, known as the common informer statute, and is based upon the allegations that the defendants entered into and carried out a conspiracy to defraud Lincoln county in connection with the sale of county owned property in the city of Stroud. The trial court sustained a demurrer to the evidence of the plaintiff and entered judgment for the defendants. From that judgment the plaintiff has appealed.

From the evidence introduced by the plaintiff it appears that the property in question is a one-story brick and stone business building, 25 feet wide by approximately 78 feet long, of the value of from $2,000 to $2,500. It was acquired by Lincoln county at a tax resale in 1936 for a tax liability of $928.32. On June 5, 1939, the board of county commissioners adopted a resolution, reciting that Silverthorn, as county treasurer, had received a bid of $25 for the property and authorized him to advertise the property for sale in the Wellston News, which is on the opposite side of the county from Stroud. It appears that no more than four copies of the Wellston News were circulated in Stroud. On July 1, 1939, the day of the sale, some one placed a bid for Gibson. The property was run up to $850 by

the defendants Karsner and Graves, and was sold to them, their bid being the highest bid received. They issued a check signed by Karsner to the county treasurer on a Stroud bank for $858.50, being the amount of the bid together with the costs of sale. Silverthorn took the check in person to the Stroud bank on the date it was issued and cashed it, receiving in exchange a cashier's check from the bank for a like amount payable to himself. This cashier's check was cashed on July 3, 1939, being indorsed by Silverthorn to Karsner and Graves, and then by Karsner, Graves, and Clyde L. Andrews. Karsner testified that she received no part of the money and the record is silent as to what became of the proceeds of the check. On July 3, 1939, Andrews, as attorney for Karsner and Graves, delivered to the treasurer a written notice, attempting to withdraw the bid, and requesting that the treasurer deliver to them the cashier's check, and advising that they had stopped payment on the same. On the same day, the treasurer filed with the board of county commissioners a return of sale, to which was attached a copy of the resolution of June 5th, copy of the publication notice, and the notice of withdrawal of the bid. The return did not recite that a bid had been received from Karsner and Graves, but recited that Gibson's bid for $85 was the highest bid and that no further "valid" bids were received, the word "valid" being inserted in the form. The county commissioners on the same day approved the sale to Gibson, reciting that the Gibson bid was the highest "valid" bid, the word "valid" being inserted in the form. On the same day, a county deed, signed by Igenthron, as chairman of the board of county commissioners, was filed for record at 2:30 p. m. And at 2:31 p. m., on the same day, a quitclaim deed from Gibson and wife to Maybel Karsner and Flora Graves, dated and acknowledged by them on the same day, was filed for record.

The question for decision is whether the court committed reversible error in sustaining the demurrer to the evidence. Did the plaintiff make out a prima facie case? The test is whether, admitting the truth of all the evidence of the plaintiff, together with such inferences as may reasonably be drawn therefrom, and eliminating all opposing inferences, there is any competent evidence reasonably tending to support the material allegations of plaintiff's petition. Caesar v. Phillips Petroleum Co., 187 Okla. 559, 104 P. 2d 429.

In Democrat Printing Co. v. Johnson, 71 Okla. 128, 175 P. 737, this court quoted with approval the following statement of the applicable rule from 5 R. C. L. 1088:

"Conspiracies need not be established by direct evidence of the acts charged, but may and generally must be proved by a number of indefinite acts, conditions, and circumstances which vary according to the purposes to be accomplished. The very existence of a conspiracy is generally a matter of inference, deduced from certain acts of the the the persons accused, done in pursuance of an apparently criminal or unlawful purpose in common between them. The existence of the agreement or joint assent of the minds need not be proved directly. It may be inferred by the jury from other facts proved. It is not necessary to prove that the defendants came together and actually agreed in terms to have the unlawful purpose, and to pursue it by common means. If it be proved that the defendants pursued by their acts the same object, often by the same means, one performing one part and another another part of the same, so as to complete it, with a view to the attainment of that same object, the jury will be justified in the conclusion that they were engaged in a conspiracy to effect that object. If, therefore, one connives in a conspiracy, no proof of agreement to concur is necessary in order to make him guilty."

See, also, Starmer v. Mid-West Chevrolet Co., 175 Okla. 160, 51 P. 2d 786; 11 Am. Jur. 570.

When these rules of law are applied to the evidence introduced by the plaintiff, we think the demurrer of all the

defendants to the evidence should have been overruled. The important fact is that property of the county worth from $2,000 to $2,500 has been conveyed and the county has received but $85 out of $850 paid by the ultimate purchasers, which was the amount such purchasers bid at the sale, and each of the defendants played an important part in the matter.

The fact that the notice was published at a place remote from the property and that the price was inadequate, while not conclusive and possibly not very strong circumstances in themselves, are to be weighed along with all the other circumstances to determine whether a conspiracy existed to defraud the county and who were the conspirators.

The county commissioners argue that the approval or disapproval of the sale called for a discretionary act on their part, and that there can be no conspiracy when the acts complained of, and the means employed in doing them, are lawful. But, if, as the plaintiff charges and his evidence tends to prove, they took part in a conspiracy to defraud the county in the sale of property under their charge, the means employed were not lawful.

The statutes (68 O. S. 1941 §§ 432 i, 432 j,) making it the duty of the board of county commissioners to acquire possession of, repair, lease and otherwise manage property acquired by the county at tax resale, and "in its discretion," to approve the sale of such property by the county treasurer before a sale can be consummated, places serious responsibilities upon the members of the board of county commissioners which must be exercised in good faith and for the benefit of the county. The discretion to approve or disapprove such a sale carries with it the duty to examine the proceedings and to ascertain that they have been regularly conducted and that the property has been sold for a fair price, considering, however, the fact that it was acquired at a tax sale

and that such a title is not looked upon with favor by purchasers.

The appellant argues other questions as to the construction to be placed upon the common informer statutes, but we assume that upon a retrial the court will carefully construe and apply said statutes.

Reversed for a new trial.

GIBSON, C.J., and RILEY, OSBORN, BAYLESS, WELCH, CORN, and DAVISON, JJ., concur. ARNOLD, J., not participating.