FIDELITY & CASUALTY CO. of N. Y. v. YELLOW CAB TRANSIT CO.

No. 32064. Oct. 8, 1946.

*173 P. 2d 432.*

Rex H. Holden, of Oklahoma City, for plaintiff in error.

Duke Duvall, Dudley, Duvall & Dudley, all of Oklahoma City, for defendant in error.

CORN, J. This is an appeal from a judgment rendered upon a jury verdict in favor of plaintiff, Yellow Cab Transit Company, in an action by plaintiff to recover $1,801.92 on a fidelity bond issued by defendant (the Fidelity & Casualty Company of New York).

Plaintiff, an Oklahoma corporation, operates as a common carrier (interstate) of freight by truck. Operations require maintenance of freight terminals at some points, while at other points only dock facilities are maintained, operated by what plaintiff designates as "commission agents." These agents furnish their own facilities for taking care of plaintiff's business in the particular locality. Such agents are employed by written contract, are permitted to engage in other business without devoting their entire time to plaintiff's affairs, and receive their compensation on a basis of an agreed sum (10c per cwt) for handling both incoming and outgoing freight. The business handled is required to be reported to the company on a weekly basis. Plaintiff's agents are bound to collect and remit freight charges on both incoming

and outgoing freight, and are permitted to deduct the amount due them for commissions from the amount of the freight charges collected.

July 5, 1940, plaintiff employed one Carl F. Westfall as its commission agent at Champaign, Ill., under written contract as above mentioned. As part of his employment Westfall was required to make a fidelity bond, premium to be paid by plaintiff. This bond, indemnifying plaintiff against loss on Westfall's account, provided (quoting only the pertinent portion) as follows:

". . . against the loss of *any money or other personal property* (including money or other personal property for which the Employer is responsible) through the fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction of any Employee named in the schedule forming part of this bond, directly or in connivance with others, while such Employee holds any position at any place in the service of Employer while this bond is in force. . . .

"4. This bond shall terminate: . . .

"(b) As to any employee upon the death or retirement from the service of the employer of the employee."

The amended petition, upon which this cause was tried, alleged Westfall's contract of employment and defendant's execution of the bond covering him; that while acting as plaintiff's agent he received funds of the plaintiff, but, in violation of the trust, wrongfully abstracted and failed to account for $1,801.92, through fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction, directly or in connivance with others, causing loss to plaintiff in this amount. Proof of loss was alleged to have been made, and defendant's refusal to indemify plaintiff for such loss. Judgment was asked for this amount.

By answer defendant admitted execution of the fidelity bond but alleged that at the time of the loss Westfall was not plaintiff's agent, and that his relationship as agent had terminated.

The fact and amount of the loss were not denied.

The record evidence reflects substantially the following state of facts. Westfall became plaintiff's agent at Champaign, Ill., on July 5, 1940. That a portion of the collections which made up the amount of the shortage had been made subsequent to December 3, 1941, but prior to the date of the alleged robbery January 29, 1942, but such collections had not been reported in the weekly reports required to be made.

There was testimony that Westfall carried a listing in the February, 1942, telephone directory at Champaign as plaintiff's agent in that city, although Mrs. Elsia Westfall, his wife and only witness for defendant, testified that her husband left the business October 10, 1941, to work in a war plant in another town.

One Edmundson, office manager of the Illinois Glove Company, and one of plaintiff's large shippers in that region, issued all checks in payment of plaintiff's freight charges. He testified that in a conversation had with Westfall subsequent to October 27, 1941, when he issued a check in payment of some charges, payable to plaintiff at Oklahoma City, Okla., Westfall directed him thereafter to make checks payable to him personally.

This witness also testified he had never done business with Mrs. Westfall, but Westfall had come to pick up checks in payment of the freight charges. Further, the witness testified he had seen Westfall several times when he came to pick up the checks or to discuss and adjust losses in shipments, and that this had occurred as late as the latter part of November, 1941.

There was testimony of other witnesses showing Westfall had purchased a used car, applying on the purchase price a check of the Illinois Glove Company, payable to Westfall, dated November 3, 1941, and endorsed by C. F. Westfall.

Additional testimony of plaintiff's auditor established that Westfall, or his wife who actively assisted him in handling the business, pursued a systematic course of withholding from the required weekly reports certain collections, reporting only non-money-producing freight bills. His testimony also was that at a town such as Champaign the billings would be about 60 per cent money producing and 40 per cent non-money producing (or prepaid freight in and C.O.D. out). The evidence showed two reports made to plaintiff prior to the alleged robbery contained approximately 90 per cent money-producing freight bills, these two reports covering all of the reported loss.

Elsia M. Westfall, wife of plaintiff's agent, was the only witness who testified in behalf of the defendant. She testified they lived above the office and handled the business; that October 9, 1941, her husband went to another city to work in a war plant, giving up his agency; that plaintiff's district manager called and she asked if plaintiff wished to change agents, but was advised to continue as she had been handling the business anyway; that she discussed with this party (plaintiff's district manager, Mr. Engelbrecht) the necessity for her being bonded and he advised her it was not necessary. The witness also testified notice of the fact that her husband had given up the agency was given to the auditor for plaintiff, a Mr. Utterback.

The plaintiff's testimony was that Utterback was not in Champaign, Ill., at any time between September 21, 1941, and January 21, 1942, following the alleged robbery, covering the period witness specified in her testimony concerning the acquiescence of plaintiff in· Westfall's surrender of the agency and the agreement had with company officials that she continue to handle the business.

The witness testified in substance that she prepared her report and counted the money and then took her dogs outside the building. When she returned the cash box containing $2,156 had been robbed. She notified the police and wrote to the bonding company to ascertain if she was bonded and was advised she was not. She then testified she continued to act as agent until February 2, 1942, when plaintiff's officers checked her out.

At the close of all the testimony defendant demurred to plaintiff's evidence on the ground plaintiff had failed to prove a cause of action, had not proved facts sufficient to sustain the allegations of the petition, and had failed to prove facts sufficient to warrant a recovery. The demurrer was overruled, as was defendant's motion for directed verdict.

Under instructions from the trial court the jury returned a verdict for plaintiff for the amount sued for. No criticism of the instructions given is made by defendant, so it is not necessary to discuss them.

Defendant's argument for reversal of this judgment is based upon a single proposition: that it was error for the trial court to everrule the demurrer to the evidence and the motion for directed verdict at the close of the evidence because there was no evidence to show the loss was occasioned by reason of fraud, dishonesty, forgery, theft, embezzlement, or wrongful abstraction by the bonded employee, Westfall, directly or in connivance with others, as was required by the bond executed by defendant.

The argument in support of this contention is that where a loss is sustained by an employer who has bond such as that in suit here, it is necessary for the employer (plaintiff) to allege and prove one or more of the fraudulent or dishonest acts mentioned in the bond, and a mere failure to account for loss is insufficient to impose liability upon the surety.

It is defendant's theory that the wife of the bonded employee was left in charge of the business with knowledge

of the employer, and she collected the money which was lost; that defendant did not guarantee the fidelity of the wife (a substituted person). Further, that there is no evidence that Mrs. Westfall took the money, but that the evidence establishes that the money was stolen from her possession. Mrs. Westfall testified the money was stolen. Plaintiff introduced evidence tending to negative the theft theory. The jury was instructed that if they believed the money was stolen from the agent or his wife before being remitted to plaintiff, then defendant would not be liable for the loss. By their verdict the jury found that no theft had been committed, and the funds in question had been abstracted wrongfully.

The sole question presented herein is whether theere was evidence sufficient to raise a question of fact requiring submission to the jury the matter of whether the loss incurred was occasioned by reason of any of the acts enumerated in the bond on the part of Westfall, directly or in connivance with others, causing the loss upon the bond executed by the defendant.

Defendant relies upon certain authorities holding there can be no recovery upon a bond (such as the one in this case) where the evidence merely shows property covered by the policy is missing, where there is nothing showing fraud or wrongdoing on the part of the agent, or to show that the agent received the proceeds, and where the evidence shows that the agency had been abandoned leaving some one else in charge.

As we view this matter the record herein does not permit the application of the rule announced by such cases. (Salley, Rec., v. Globe Indemnity Co. et al., 133 S. C. 342, 131 S. E. 616; Aetna Bldg. & Loan Ass'n v. Central Surety & Ins. Co., 145 Kan. 622, 66 P. 2d 577.)

The entire appeal turns upon the question of whether Westfall was plaintiff's agent at the date the alleged robbery occurred, which was the date the amount of shortage become known. If Westfall was acting as the agent then, the only remaining question is whether there is any evidence sufficient to create a question of fact for the jury's determination as to whether the loss was occasioned by him or in connivance with others in abrogation of the terms of the defendant's bond.

It is a well established rule in this state that on a demurrer to the sufficiency, of the evidence, the question presented to the trial court is, admitting the truth of all plaintiff's evidence, together with such inferences and conclusions as may reasonably be drawn therefrom, and eliminating all opposing inferences, whether there is any competent evidence tending to support plaintiff's petition. Caesar v. Phillips Pet. Co., 187 Okla. 559, 104 P. 2d 429; Medlin v. Safeway Stores, 195 Okla. 359, 157 P. 2d 907; State ex rel. Elsey v. Silverthorn, 195 Okla. 696, 161 P. 2d 858.

The evidence establishes that: Westfall was employed under a written contract; there was no cancellation of the contract, nor was a new contract made with Mrs. Westfall; Westfall's contract permitted him to accept other employment, and the fact he was otherwise employed does not establish termination of his agency; both Westfall and wife helped in carrying on business; Westfall personally looked after certain details of the business after the date defendant contends his agency was abandoned and he made collections of freight bills owing plaintiff, and discussed the matter of adjustment of losses after said date.

The foregoing facts and circumstances were sufficient to require submission to the jury the question whether Westfall had abandoned his agency. By their verdict the jury resolved this question against the defendant.

We have held that a jury may accept circumstantial evidence on one side and reject positive testimony concerning the same point on the other side. Ironside v. Ironside, 188 Okla. 267,

108 P. 2d 157, 134 A.L.R. 621. And we have recently held that circumstantial evidence in civil cases, to sustain a verdict, need not rise to the degree of certainty which will exclude every reasonable conclusion other than the one arrived at by the jury. Midland Valley Ry. Co. v. Barton, 191 Okla. 359, 129 P. 2d 1007; Cities Service Oil Co. v. Eggers, 186 Okla. 466, 98 P. 2d 1114, 126 A.L.R. 1278.

Defendant urges the lack of evidence showing that the bonded employee, Westfall, committed any act breaching the bond, or that his wife committed any such act. And even if the wife did commit such acts, defendant did not underwrite her honesty in the bond executed. We are convinced that the record evidence amply justified the trial court in submitting to the jury the question of defendant's liability, based upon the showing as to the continued course of conduct carried on by the Westfalls in handling plaintiff's business during the period of the agency. The jury having resolved these questions in favor of the plaintiff, we will not reverse on appeal a judgment sustained by competent evidence. See Malernee Oil Co. v. Kerns, 187 Okla. 276, 102 P. 2d 836.

Judgment affirmed.

HURST, V.C.J., and RILEY, BAYLESS, WELCH, and DAVISON, JJ., concur.