## WILLIAMS v. NEW BRUNSWICK FIRE INSURANCE CO.

No. 24136.   May 7, 1935.

·Bruce & Jefferson, for plaintiff in error.

Tom Finney, for defendant in error.

CORN, J. The parties will be referred to herein ·as they appeared in the court below.

This suit was commenced in the district court of McCurtain county, on June 2, 1931, by E. Williams, plaintiff in error, plaintiff below, against the New Brunswick Fire Insurance Company, defendant in error, defendant below, by filing in said court a petition for the recovery of damages upon a certain fire insurance policy resulting from loss caused by destruction by fire of certain household goods covered by said policy of insurance.

The petition sets forth three separate causes of action, but as the third cause of action is not briefed or argued by the plaintiff in error, we will treat the same as abandoned.

In the first cause of action it is alleged, among other things, that the defendant, prior to January 24, 1931, and for a valuable consideration, issued to the plaintiff a certain fire insurance policy, insuring the plaintiff against loss and damage by fire on certain household goods, while located in a dwelling situated upon lot 6, block 3, of the Dennison addition to the city of Idabel, Okla., in the sum of $2,000. That said policy was in force on the 24th day of January, 1931, and that while located· as aforesaid, on said date, the said household goods were totally .destroyed by fire and the plaintiff had sustained a loss in the sum of $2,800,

and asked for judgment for $2,000· for the full amount of said policy.

In the second cause of action it was alleged practically the same state of facts as set forth in the first cause of action, relative to the issuance and liability of the defendant under said policy, also the loss sustained by the fire on January 24, 1931. In addition thereto it was further alleged, among other things, that soon after the loss occasioned by said fire and prior to the filing of this suit, on January 30, 1931, the plaintiff and the defendant, by its claim adjuster, reached an amicable agreement as to the amount to be paid by the defendant and accepted by the plaintiff in satisfaction of said loss and damages resulting from the destruction of said household goods by said fire. That the amount agreed upon in reaching said settlement of said damages was $968.75, which amount was accepted and approved by the defendant; that the defendant thereafter, and pursuant to said agreement, sent to its agent in Idabel a check·for the said sum of $968.75 to be delivered to the plaintiff in satisfaction of said claim, pursuant to said agreement. But before said check was delivered, defendant repudiated said agreement and recalled said check; and by reason of said agreement of settlement defendant became liable to the plaintiff in the sum of $968.75, less the sum of $500· paid on April 27, 1931, and praying for judgment in the second cause of action in the sum of $468.75.

The defendant filed its answer, in which it admitted the issuance of the policy and ·the provisions in said· policy providing for ·the loss by fire of said household goods located upon said lot; and also admitted that said household goods were destroyed by fire while located in said dwelling and that the plaintiff claimed damages by reason of said loss. Defendant denied the value of said property and further pleaded as a defense that this defendant and said plaintiff compromised said claim of said plaintiff against defendant, and defendant had made a complete settlement with said plaintiff for any damages, or sum due, for the sum of $500, and that said sum of $500 was paid by defendant to plaintiff and by the plaintiff accepted in full settlement of any and all claims and demands whatsoever against the defendant.

That in payment of said sum of $500· by the defendant to said plaintiff, the defendant issued its draft in said amount, and that said plaintiff signed receipt on the back of said draft which receipt is in words as follows, to wit:

"In consideration of the sum hereby paid, all claims and demands whatsoever against the New Brunswick Fire Insurance Company, New York, under this policy by reason of the within mentioned claim for loss and damage, were released, settled and forever discharged.

"(Signed) E. Williams."

—and made said draft exhibit to answer.

The defendant further pleaded that after the draft was delivered to said plaintiff and the same was signed by him, he delivered it to Dan Strawn Insurance Agency, local agent for said defendant, with the request that same be cashed and that the proceeds from said draft in currency be delivered to said plaintiff, and that said draft was cashed at the Idabel National Bank in Idabel, and that said sum of $500 in currency was paid to said plaintiff, E. Williams, and the said plaintiff, E. Williams, signed a receipt for said sum and delivered same to said local agent of said defendant company, which receipt is in words and figures as follows, to wit:

"Idabel, Oklahoma
"Apr. 28, 1931.

"Received from Dan Strawn the sum of five hundred and no/100 dollars ($500.00), in currency, said money being the proceeds from a draft in said amount drawn by the New Brunswick Fire Insurance Company in favor of Dr. E. Williams in full and complete settlement of any and all claims which the said Dr. E. Williams has or may have against said New Brunswick Fire Insurance Company under its policy No. DFW-146 issued at its Idabel, Oklahoma, agency."

"Witnesses:

"R. D. Hanawalt.

"(Signed). Dr. Williams,
"A. H. Smith."

That said plaintiff, E. Williams, surrendered to the defendant for cancellation of said insurance policy No. DFW-146 and released and discharged this defendant from any and all liability to the plaintiff for the payment of any and all sums whatsoever. The answer of the defendant to the second cause of action adopted the allegations contained in its answer to plaintiff's first cause of action and makes the same a part hereof as if fully copied herein.

Plaintiff in his reply to the answer filed by the defendant denies that he and the defendant compromised and settled the $968.75 claim of plaintiff for $500, and denies that the $500 paid plaintiff by defendant was in full settlement and satisfaction of plaintiff's claim against the defendant,

admitting that he signed the receipts shown as exhibits B and C, but states that said receipts were without consideration as release of and satisfaction of plaintiff's claim against defendant in full. That by agreement and settlement between the plaintiff and defendant as set forth in plaintiff's second cause of action, the amount due plaintiff was $968.75, and was agreed upon and liquidated, and that the purported proof of loss as set forth in exhibit A to defendant's amended answer was procured by a fraud, and that exhibits B and C were obtained from him by means of duress and menace practiced upon him by the agents and servants of the defendant; that he was struck and beaten by one Arthur Callihan and that unless he accepted the $500 and signed the receipts that he would kill him, and that through fear of being arrested and through fear of receiving other bodily harm, he accepted said $500 and signed said receipts.

The facts of this case are substantially as follows:

The defendant insurance company issued its policy of insurance insuring the household furniture and effects of the plaintiff, Dr. Williams, against loss by fire, limiting its liability to the sum of $2,000. The plaintiff was occupying the residence owned and formerly occupied by Dr. C. A. Griffin. At the time Dr. Griffin rented the house to the plaintiff and at the time of the fire the residence was completely furnished with the household furniture belonging to Dr. Griffin. While said insurance was in force the residence of Dr. Griffin, with the contents thereof, including the furniture and effects of the plaintiff, was completely destroyed by fire. Prior to the issuance of the said policy the local agent of the defendant, Dan Strawn, inspected the household furniture and without disclosing that a part of the furniture belonged to Dr. Griffin, the wife of the plaintiff pointed out the various articles of furniture in the house, and the policy was written assuming that the plaintiff owned all of the furniture. After the fire the defendant was notified by its agent, Mr. Strawn, and within a few days sent its adjuster, R. W. Suggs, to Idabel, where the loss occurred, to make adjustment. Before entering into negotiations with Dr. Williams the adjuster and plaintiff executed a "nonwaiver agreement," referred to as exhibit A, and the adjuster proceeded to examine and inspect the loss. The adjuster and plaintiff then signed a written form agreement as to sound value and

loss and damage, and limited the liability of the defendant to the sum of $968.75. The execution of the nonwaiver agreement, and agreement as to sound value, loss and damages, closed the negotiations had between the plaintiff and the adjuster on this particular trip to Idabel. The loss was submitted to the defendant.

Dr. Griffin filed proof of loss of household furniture destroyed in the fire, and after the defendant insurance company received information that Dr. Griffin was claiming ownership of the goods destroyed by the fire, it refused to make payment to Dr. Williams.

Through other negotiations of the said adjuster and agents of the defendant, a compromise and settlement was made by the said defendant with the said plaintiff. In compliance with the compromise agreement the defendant, by its adjuster, issued and delivered to the plaintiff its draft, which was indorsed by Dr. E. Williams. The draft was issued and delivered to the plaintiff in the office of Mr. Dan Strawn, the local agent of the defendant. After the draft was issued and delivered to plaintiff and indorsed by him, plaintiff stated that he wanted the cash, as he was afraid the draft would be turned down. After some discussion, one A. H. Smith took the draft to the bank and received thereon the sum of $500 in currency, which he brought back to the office for the plaintiff.

After some discussion the plaintiff did not accept the money on that date, but did on the 28th day of that month accept the money and gave the receipt heretofore set out.

Counsel for plaintiff in their brief discuss the assignments of error under three general propositions; we will, therefore, take them up in the order we find them in their brief.

Under the first proposition, counsel for plaintiff contend that the evidence is not sufficient to support the verdict of the jury and the judgment of the court. The defendant pleaded as a defense a compromise and settlement, and introduced evidence seeking to establish the same. From an examination of the evidence we conclude that the testimony was not only sufficient, but abundantly supported defendant's contention that any and all claims of the plaintiff against the defendant have been compromised and settled. Where the amount of a claim is in good faith disputed and the parties interested therein enter into a compromise agreement, the same is a. sufficient consideration to uphold the settlement, and the compromise and agreement of settlement thus made constitutes a bar to any further recovery thereon.

Counsel for plaintiff further contend under their first proposition that the agreement of compromise and settlement was not binding on the plaintiff because of duress and menace practiced on the plaintiff by the defendant. Briefly, the plaintiff testified that he accepted the draft because one Arthur Callihan knocked him down and forced him to accept the draft, and that he accepted the money because he was afraid of receiving a beating and also afraid of being prosecuted for false swearing. The facts on this point are that the plaintiff had borrowed $110 from Arthur Callihan, and had given him his note to be paid out of the insurance money when it was collected. The plaintiff and Mr. Callihan came to the local agent of the defendant, Dan Strawn, and delivered the note and an order to pay the money, and the alleged difficulty between plaintiff and Callihan arose over the collection of this money, at a different time from the date the draft was signed by said plaintiff; and, furthermore, the said Arthur Callihan was not an employee, agent or representative of the defendant. This issue was submitted to the jury under proper instructions by the court, but counsel for plaintiff contend in their brief that there was no testimony sufficient to submit this issue to the jury. We do not see any merit in this contention, for an examination of the record will disclose that there was ample testimony upon which to submit this issue to the jury and that a preponderance of the testimony on this point supports the verdict of the jury.

Plaintiff's second proposition is error of the court in excluding evidence offered by the plaintiff and the admission of evidence offered by the defendant over objection of plaintiff.

Plaintiff first complains of the exclusion of the testimony by the plaintiff that Mr. Strawn told plaintiff he had a check from the New Brunswick Fire Insurance Company for $968.75. If there was any error in excluding this testimony, the error was cured, for the witness Mr. Strawn testified that he had this conversation in which he told plaintiff that he had a check from the insurance company for $968.75.

The next testimony excluded which plaintiff complains was error. is as follows:

"Q. Doctor, what was the purpose in the execution of. this, plaintiff's exhibit 3?

Mr. Finney: Objection for the reason it is incompetent, irrelevant and immaterial—not the best evidence, and calls for a conclusion of the witness—the instrument speaks for itself. The Court: I don't believe that can be changed by oral testimony. The objection is sustained. Exception."

The plaintiff cites no authority that the sustaining of the objection is error. Plaintiff's exhibit 3 was in evidence and no predicate was laid by the plaintiff to alter or change this exhibit by parol testimony. There are other objections to the exclusion of testimony along the same line as to said exhibit 3, but we do not feel it would serve any useful purpose to set forth the same herein.

If there was any error in the exclusion of this testimony and the testimony heretofore set out, as to the purpose of the execution of plaintiff's exhibit 3, the same is immaterial, for the plaintiff was permitted to fully identify and testify as to the purpose of the execution of this exhibit.

There is no merit in plaintiff's contention that incompetent evidence was admitted over the objection of the plaintiff, that the testimony of the defendant was an attempt to change the terms of a written agreement by a parol executory agreement.

Where evidence is offered in the trial of a cause which is excluded upon objection of counsel for opposing party, the cause will not be reversed upon error predicated thereon, even though the exclusion thereof may have been error, if the record affirmatively shows that the same evidence in a different form was later in the trial introduced and the trial court had the benefit before judgment of the information sought to be elicited by the evidence thus excluded.

Proposition 3 sets up error of the court in its instructions to the jury. The record does not disclose there was any objection made or any exception saved by the plaintiff to the instructions except as to paragraph 4 of the court's instructions, which is as follows:

"You are further instructed, Gentlemen, that a person signing a written instrument is presumed to know its contents, and where one person claiming a demand against another, which is denied in amount or otherwise, accepts a certain sum thereon and executes and delivers his receipt therefor in full settlement, when such receipt or release or settlement is pleaded as a defense to a cause of action thereafter filed in court, the burden rests upon the one who signed the receipt or release and who seeks to avoid it—the burden rests upon him to overcome or to avoid his release formerly signed by him, and in order to overcome the same the evidence must be clear and convincing that the receipt or release was procured by duress as claimed or alleged in the pleadings."

This court in the case of Pacific Mutual Life Insurance Co. of California v. Coley, 62 Okla. 161, 162 P. 713, in the second paragraph of the syllabus held:

"Where one claiming a demand against another which is denied accepts a certain sum thereon and executes and delivers his receipt therefor in full settlement, the burden rests upon him to avoid same, where it is pleaded as a defense to a cause of action subsequently instituted by him upon such demand, and in order to overcome the same the evidence must be clear and convincing that the receipt was procured by fraud or misrepresentation, or that the same was not the free and voluntary act of the one signing the same on account of his mental condition."

We, therefore, hold the court did not err in giving the above instruction, and as no exception was reserved to any of the other paragraphs of the court's instructions, the same will not be reviewed by this court.

The judgment of the trial court is affirmed.

McNEILL, C. J., OSBORN, V. C. J., and BAYLESS and GIBSON, JJ., concur.