**Charles A. SHADID,**
**Appellant/Counter Appellee,**

v.

**Johnny MONSOUR, et al.,**
**Appellees/Counter**
**Appellants.**

**Nos. 62341, 62479.**

Court of Appeals of Oklahoma,
Division No. 3.

June 16, 1987.

Rehearing Denied Aug. 25, 1987.

Certiorari Denied Nov. 14, 1987.

Danny K. Shadid, Oklahoma City, for Charles A. Shadid.

Collier Pate, Oklahoma City, for George Salamy.

Gary A. Gingrich, Oklahoma City, for Richard Salamy.

Kent F. Frates and Michael Harrah, Oklahoma City, for Johnny Monsour.

James R. Waldo, Oklahoma City, for E.B. Barron.

Bryce Baggett, Oklahoma City, for Central Nat. Bank of Oklahoma City, N.A.

HANSEN, Presiding Judge:

This is an action for damages for conspiracy to defraud Plaintiff of $700,000.00.

On December 20, 1982, Plaintiff/Appellant Charles Shadid (Shadid) wrote a personal check for $700,000.00 payable to the order of Fred Monsour, Jr. (Fred). Fred signed a promissory note for that amount and a mortgage of real estate to secure the note which was due and payable March 10, 1983. Both men signed an agreement which stated, among other things, that "the funds advanced by Shadid [$700,-000.00] will be for the sole purpose of purchasing x-ray film."

Prior to this time, Shadid sought a loan for $700,000.00 from Liberty National Bank, (Liberty) and Fred accompanied Shadid there to explain to the loan officer the purchase of x-ray contracts. Liberty agreed to the loan. On December 28, 1982, Shadid, Fred and Defendant George Salamy (George) went to Liberty to exchange Shadid's personal check for a cashier's check in a like amount. Liberty issued the cashier's check for $700,000.00 payable to the order of Fred Monsour, Jr., and Shadid delivered it into Fred's possession the same day.

It is disputed whether the $700,000.00 cashier's check represented a loan to Fred or whether it was an investment to purchase used x-ray film.[1]

In any event, Fred did not pay $700,-000.00 to Shadid on March 10, 1983. As a result Shadid sued Fred upon the promissory note and to foreclose his mortgage. He later amended his petition and named Johnny Monsour (Johnny), George Salamy (George), Richard Salamy (Richard), E.B. Barron (Barron), and Central National Bank of Oklahoma City (CNB) as co-defendants in the instant action wherein he alleges defendants entered into a conspiracy to defraud him of $700,000.00. He also named Oscar Horton (Oscar) as a defendant.[2] He obtained a default judgment against him and Fred.

At trial all other defendants demurred to Shadid's opening statement. The trial court sustained the demurrer of Richard while overruling the demurrers of the other defendants. At various times during the trial, Shadid moved the trial court to order that a prima facie case of conspiracy had been established against all defendants so that he could proceed to introduce statements of defendants against one another pursuant to *Dill v. Rader*, 583 P.2d 496 (Okla.1978). The trial court found a prima facie case had been established against George, but made no such ruling as to the remaining defendants.

---

1. There exists a process by which silver may be extracted from used x-ray film, refined and sold at a profit. According to Shadid, whenever Fred purchased x-ray film, he referred to the transaction as a "contract."

2. Shadid contends Oscar was the person who was to have received the $700,000.00 from Fred to purchase the used x-ray film.

When Shadid rested his case, the trial court sustained demurrers to the evidence of Johnny, CNB, Barron and also George. Accordingly, the case was dismissed.

Thereafter, the trial court ordered that costs be assessed against Shadid in favor of all defendants and denied defendants' requests for attorney fees.

Shadid appeals based on the trial court's various rulings, and defendants have cross-appealed on the issue of attorney fees.

On appeal Shadid contends the trial court erred in:

1) sustaining Richard's demurrer to the opening statement;

2) refusing to admit into evidence Defendants' deposition statements and admissions made in response to requests for admissions;

3) excluding statements of out-of-court conspirators pursuant to *Dill v. Rader,* 583 P.2d 496 (Okla.1978);

4) its application of *Dill v. Rader* by refusing to admit relevant evidence;

5) its application of *Dill v. Rader* by "weighing" the evidence in its determination of whether a prima facie case of conspiracy had been established, thereby denying Shadid's right to trial by jury;

6) sustaining demurrers to the evidence submitted by respective Defendants because it did so by viewing the evidence in a light most favorable to Defendants as opposed to Shadid as required by law;

7) refusing to impose a constructive trust upon monies received by Defendants out of the $700,000.00 cashier's check;

8) awarding costs to Defendants and in arriving at the amount of costs;

9) that it was prejudiced against Shadid as reflected in its conduct and comments at trial and as such Shadid was deprived of a fair and impartial trial.

The primary issue in this appeal is whether sufficient evidence was presented against defendants to overcome a demurrer to the evidence. Shadid contends the trial court erred in its determination no prima facie case had been established because it "weighed" the evidence. He contends *Dill v. Rader, supra,* should be modified to allow the trial court simply to determine whether *any* evidence has been presented as to the elements of a conspiracy.

In *Dill v. Rader, supra,* the Oklahoma Supreme Court stated:

To make out a prima facie case of conspiracy, evidence must be (1) clear and convincing and (2) such evidence must do more than raise suspicion—it must lead to belief. The rules of law set forth above also provide that disconnected circumstances, any of which, or all of which, are just as consistent with lawful purposes as with unlawful purposes, are insufficient to establish a conspiracy.

■ To follow the mandate of *Dill v. Rader, supra,* the reviewing court does not weigh the evidence, even though Shadid asserts the burden of determining whether "clear and convincing evidence" exists is per se weighing the evidence, thus invading the province of the jury.

"Weighing" the evidence presupposes balancing the evidence of one party against his opponent. *Dill v. Rader, supra,* does not require a weighing process to occur before the reviewing court can determine whether a prima facie case has been established; instead it simply holds the standard of proof must be more strict to establish a prima facie case of conspiracy than to establish a prima facie case in a different cause of action. This argument is without merit.

■ Shadid also argues the "clear and convincing" standard of proof applied to circumstantial evidence in *Dill v. Rader, supra,* should not apply to the evidence in the instant case because it is a combination of direct evidence and circumstantial evidence. However, he cites us to no Oklahoma authority for the proposition the trial court may not determine the sufficiency of the evidence in cases of mixed direct and circumstantial evidence.

Therefore, to determine whether there existed a prima facie case of conspiracy, *Dill v. Rader, supra,* is controlling authori-

ty, and although it creates a tremendous burden on a conspiracy plaintiff, we must follow its dictates. In *Wright v. Cies*, 648 P.2d 51 (Okla.App.1982) footnote 2 defines conspiracy as "a combination of two or more persons to accomplish by concerted action, some unlawful objective by either lawful or unlawful means." The gist of the civil action is damages and not the conspiracy.[3]

Shadid contends all of the defendants combined for the purpose of diverting Shadid's funds to their own uses by defrauding him and contends he was injured by the loss of the $700,000.00 investment.

■ To constitute a conspiracy, there must be a meeting of the minds on the course of action, coupled with an intent to commit the fraudulent act which results in the injury. The agreement is a matter of inference from the facts and circumstances of the alleged conspirators.[4] The question is whether the circumstances, considered as a whole, show that the parties united to accomplish the fraudulent scheme.[5]

■ Basically, the evidence in the light most favorable to Shadid reveals that in November Fred initially approached Shadid to encourage him to invest in x-ray film. He asked Shadid to telephone George, Barron, and Johnny. He telephoned each of them separately, and George stated he had made money in the x-ray investments and encouraged Shadid to invest. He further encouraged Shadid on many occasions and was with him and Fred when Shadid obtained the funds for his loan. Barron told him he had made money on his investment, also, and his relationship with Fred was satisfactory. Barron did not tell Shadid that Fred had owed him money on an x-ray contract since September 1982. Shadid telephoned Johnny, who told him he knew Fred and George were buying and selling x-ray film and were making a profit from

it. He also told Shadid he knew of no reason why Shadid should not become involved in the purchase of the film. Johnny also stated he was not involved in the transactions. George was involved in three x-ray contracts with Fred at that time but testified he wanted to roll over the loan he received from First Continental Bank into the new x-ray contract in which Shadid was investing.

All defendants had motives to obtain funds. At the time George approached Shadid to encourage him to invest his money, George himself was overdue on a note to First Continental, and he and Richard were overdue on a note to CNB. Both George and Barron were anxious to obtain a return on their prior investments with Fred. Johnny needed funds to cover a $32,000.00 bad check he had written on December 21st, one day after Shadid wrote a personal check to Fred for $700,000.00.[6] All of the proceeds from Shadid's cashier's check to Fred flowed into the hands of defendants, some of whom knew their funds were being obtained through the proceeds of Fred's check. George and Richard paid off their uncollateralized note at CNB, and George paid the interest on the note at First Continental. Van, agent for CNB, wanted this overextended, uncollateralized note at CNB retired, and he had promised Shadid he would make Shadid's cashier's check payable to Oscar, the ultimate, intended recipient of Shadid's funds.

Do the foregoing facts indicate defendants united with intent to divert Shadid's funds to their own uses by making material misrepresentations on which Shadid would rely to his detriment? Or are these circumstances just as consistent with a lawful purpose as an unlawful one?

Although there may be an inference of an agreement to defraud Shadid and of intent or motive to defraud him, the above

3. *Barsh v. Mullins*, 338 P.2d 845 (Okla.1959).

4. *State v. Silverthorn*, 195 Okla. 696, 161 P.2d 858 (1945).

5. *Morris v. Dodge*, 85 N.M. 491, 513 P.2d 1273 (App.1973).

6. Shadid told Fred this check was not yet funded. Also, on December 20, 1982, George issued a personal check to Johnny for $60,000.00. On December 29th, George replaced this check with a cashier's check to Johnny for the same amount and ordered a stop payment on the personal check.

evidence does not rise to the level of clear and convincing evidence required by *Dill v. Rader* to establish a prima facie case against any of the defendants. The recited circumstances are just as consistent with a lawful purpose as an unlawful purpose. The trial court did not err in sustaining the respective demurrers to the evidence.

■ Shadid also contends it was error for the trial court to sustain Richard's demurrer to the opening statement. However, assuming without deciding such error was made, and upon consideration of the finding above and the rule that a conspiracy of one does not exist, we find such error, if made, was harmless in that the evidence of the conspiracy was determined to be insufficient. *See, Davis v. Whitsett*, 435 P.2d 592 (Okla.1967).

■ Shadid's propositions II, III, and IV wherein he contends the trial court erroneously excluded defendants' statements taken during depositions, their judicial admissions made in response to requests for admissions, statements of out-of-court co-conspirators, and other relevant evidence offered to show disposition of Shadid's funds, motives and interaction of defendants are of an evidentiary nature. Therefore, we shall discuss these contentions together. After reviewing the record, however, it is apparent to this Court the excluded information was evidence already duplicated by testimony admitted into evidence at the trial. Exclusion of evidence does not warrant reversal where the matter excluded was later introduced into evidence in a different form. *Williams v. New Brunswick Fire Ins.*, 172 Okl. 135, 45 P.2d 127 (1935).

■ Next, Shadid contends the trial court erred in refusing to impose a constructive trust upon monies received by defendants out of Shadid's $700,000.00 investment. In his petition, Shadid prayed for all relief to which he may be entitled; yet such relief was not included in the pre-trial order. 12 O.S. Ch. 2 App., Rule 5(g) provides:

"A Pre-trial Conference Order should be made which shall record the action that was taken at the conference and the admissions and agreements of counsel as to any of the matters considered, including what facts and issues are admitted, what facts and issues must be litigated and the theory or theories of the claim and the defense. This Order shall be filed in the case and shall be deemed to be part of the record in the action. After it is filed, this Order shall control the subsequent course of the action. The pleadings shall be deemed to have been amended to conform to it, and unless otherwise stated in the Order, it shall supersede the pleadings. The Order may be amended to prevent manifest injustice, but shall not be necessary to amend the pleadings."

The pre-trial order controls the issues to be litigated and supersedes the pleadings. *Federal Deposit Ins. Corp. v. B.A.S., Inc.*, 735 P.2d 358 (Okla.App.1987). Thus, because a constructive trust theory was not listed in the pre-trial order, the trial court properly refused consideration of the same.

■ Shadid contends the trial court erred in awarding costs to Defendants. Pursuant to 12 O.S.1981 § 929 costs shall be allowed to a prevailing defendant in an action for the recovery of money. The expense of taking a deposition is a proper item of cost to be allowed to a prevailing party if necessary for the protection of the party's interest and if authorized by statute.[7]

■ Shadid asserts some of the depositions taken by defendants were unnecessary; however, his argument in this regard is unpersuasive. He indicates in his brief only that the depositions cover the same matter, but does not indicate that in obtaining certain depositions, the defendants were not attempting to protect their own interests. Additionally, he cites *Ford Motor Credit Co. v. Goings*, 527 P.2d 603 (Okla.App.1974) for the proposition that costs for depositions are to be for originals only and not copies. While the *Goings*

7. *Owens v. Clark*, 177 Okl. 519, 61 P.2d 201    (1936).

case does hold that originals may be taxed as costs, it does not hold that copies may not be so taxed in a case similar to the instant case wherein multiple parties are involved. There was no error in awarding to defendants the costs of the depositions or the amounts thereof.

For his final proposition of error, Shadid contends the trial court was biased and prejudiced against him and, as such, was deprived of a fair and impartial trial.

■ Although *Dowell v. Hall*, 85 Okl.Cr. 92, 185 P.2d 232 (1947), is a criminal case, we find its holding persuasive. In *Dowell* the Oklahoma Court of Criminal Appeals held the fact a trial judge may entertain an opinion as to a defendant's guilt is not necessarily grounds for disqualification. A trial may be conducted without prejudice even if the judge has an opinion as to the defendant's guilt; however, the judge may not entertain a personal prejudice against the defendant.[8] Applied to the instant case, Shadid has recited conduct on the trial court's behalf which he asserts was prejudicial to him at trial. However, none of the recitations set forth in Shadid's brief rises to the level of a personal bias or prejudice against Charles Shadid. This allegation of error is without foundation.

■ In their briefs in support of their cross-appeal, defendants allege the trial court erred in refusing to award them attorney fees or that it erred in not granting an evidentiary hearing to determine if Shadid brought his action in bad faith. Although they concede the American Rule applies, which states that attorney fees are not ordinarily recoverable in the absence of a statute or specific contractual authority,[9] they insist an exception exists to this rule which applies herein. In *City National Bank and Trust Co. v. Owens*, 565 P.2d 4 (Okla.1977), the Oklahoma Supreme Court held the trial court may award attorney fees to a successful party when his opponent has acted "in bad faith, vexatiously, wantonly or for oppressive reasons."

It is evident from our perusal of the record that Shadid did not bring this action in bad faith; moreover the trial court explicitly stated in the order denying attorney fees he was "not convinced that Mr. Shadid did not bring and prosecute this action in good faith...."

■ Further, defendants assert they served Shadid with individual Requests for Admissions seeking his admission that he had no evidence that each of the defendants participated in the conspiracy. Shadid denied these separate requests as to each defendant. Thus, they assert Shadid must pay their attorney fees pursuant to 12 O.S. Supp.1983 § 3214. This assertion is clearly without merit. The request addressed the ultimate issue and Shadid did present such evidence at trial. Because the right to attorney fees only exists by virtue of contract or statute, and there is no evidentiary basis for an exception to this rule, the trial court had no authority to make such an award. *Goodman v. Norman Bank of Commerce*, 565 P.2d 372 (Okla.1977). Thus, the trial court did not err in refusing to award attorney fees to Defendants.

Therefore, for the reasons heretofore discussed, and by virtue of the law as expressed in *Dill v. Rader, supra,* the decision of the trial court is affirmed.

AFFIRMED.

HUNTER, J. concurs.

BAILEY, J., concurs by reason of stare decisis.

---

**8.** *Young v. State,* 74 Okl.Cr. 64, 123 P.2d 294 (1942).

**9.** *Wieland v. Danner Auto Supply, Inc.,* 695 P.2d 1332 (Okla.1984).