R.J.B. GAS PIPELINE COMPANY, a corporation; Samson Oil Company, a corporation; Robert J. Beams; R.E. Lee, Sr.; David B. Benham; R.E. Lee, as Trustee of that certain Express Trust known as the Jane S. Lee–1974 Irrev-

ocable Trust; Lexington Gas & Marine, Inc., a corporation; T.F. Hodge; Sinclair; Charger Oil Company, Ltd., a partnership; Terry L. El Kouri; Robert E. Lee, Jr.; Horace K. Calvert, as Trustee of that certain Express Trust known as the A. Lee Parents Minors Trust; M.S.L. Oil Company, a partnership; Nineteenth Seed Company, a corporation; Rebel Oil–1974, Ltd., a partnership; D.B. Rooker, III; R.R. Tway, Inc., a corporation; J. Hawley Wilson, Jr.; Horace K. Calvert as Trustee of that certain Express Trust known as the R.W. Lee Parents Minors Trust; Grand Energy, Inc., a corporation; Sub–Charles Corporation, a corporation: Charles D. Phillips; M. Stanley Lee, Trustee of those certain Express Trusts known as the Linda J. Lee Trust No. 1 and the Terry L. Lee Trust No. 1; Charles A. Martin; Traveler, Incorporated, a corporation; T. Ray Phillips, Jr., Trustee of that certain Trust known as the R.E. Lee II Trust No. 1; Viking Exploration, Inc., a corporation; Wayne Tate; Rebel Oil Company, a corporation; and CSM, Inc., a corporation, Appellees/Counter Appellants,

v.

COLORADO INTERSTATE GAS COMPANY, Appellant/Counter Appellee.

Nos. 68742, 70123 and 70660.

Court of Appeals of Oklahoma,
Division No. 3.

May 29, 1990.

Rehearings Denied Oct. 16, 1990.

Certiorari Dismissed June 17, 1991.

---

**5.** *Earlsboro Energies Corporation v. Arkla, Inc.,* No. CIV–87–1372–W (W.D.Okla. Dec. 23, 1987).

**18**

H.B. Watson, Jr., and Donna N. Blakley, Oklahoma City, Jeffrey M. Goldsmith, Colo. Interstate Gas Co., Colorado Springs, Colo., for appellant, counter appellee.

Stanley L. Cunningham, Robert H. Gilliland, Jr., and Myrna R. Schack, Oklahoma City, for appellees, counter appellants.

## OPINION

HANSEN, Presiding Judge:

This case involves claims brought by RJB Gas Pipeline Company (Plaintiff/Appellee) and thirty-three other Plaintiffs against Colorado Interstate Gas Co. (Defendant/Appellant) for alleged breach of the take-or-pay provisions of seven gas purchase agreements. The thirty-four Plaintiffs claim to be the working interest owners in gas wells covered by the seven gas purchase agreements. The seven gas purchase agreements, referred to as Contract Nos. 337, 338, 651, 662, 834, 840A and 995, cover eighteen different gas wells located in southeastern Colorado from which CIG purchases gas. Defendant is an interstate natural gas pipeline company, and is regulated by the Federal Energy Regulatory Commission ("FERC"). The wells are directly connected to CIG's pipeline system. Plaintiff Samson Oil Company ("Samson") acts as the operator of the wells.

Plaintiffs commenced this action in April, 1984, seeking actual damages for Defendant's alleged failure to make take-or-pay payments under the contracts. Plaintiffs also alleged Defendant had anticipatorily repudiated the contracts. Plaintiffs further sought punitive damages for Defendant's alleged failure to pay. Defendant answered, denying liability and raising numerous defenses. Defendant moved to strike the punitive damages claim. The court granted the motion. On July 15, 1986, the trial court granted Plaintiffs' motion to strike Defendant's defense of commercial impracticability.

The case came to trial on February 9, 1987. Plaintiffs sought approximately $5,000,000 for past breach of contract and $13,000,000 for anticipatory repudiation. At the close of Plaintiffs' case-in-chief, Defendant demurred to all the evidence. The court sustained Defendant's demurrer to the evidence on Plaintiffs' claims for anticipatory breach and overruled it in all other respects. At the close of Defendant's case-in-chief, the court directed a verdict for Plaintiffs as to liability on the take-or-pay claims. At the close of all the evidence, the trial court overruled Defendant's demurrer to the evidence in the take-or-pay claims. On March 5, 1987, the jury returned a verdict for Plaintiffs in the aggregate amount of $4,147,245.49. Defendant's motion for judgment notwithstanding the verdict and alternative motion for a new trial were denied.

Following trial, the trial court awarded Plaintiffs $465,481.18 in prejudgment interest. It further ruled Plaintiffs were entitled to costs and attorneys' fees in an amount to be determined in an evidentiary hearing.

In appeal number 68,742, Defendant appeals the denial of its motion for new trial and seeks review of the judgment entered in Plaintiffs' favor on Plaintiffs' breach of contract claims. It also appeals the trial court's striking its defense of commercial impracticability. Plaintiffs counter-appeal seeking review of the trial court's order striking their prayers for punitive damages and the trial court's subsequent refusal to allow them to offer evidence in support of their tort claim. They further seek review of that portion of the judgment awarding makeup volumes to Defendant upon satisfaction of the judgment entered against Defendant.

On October 6, 1987, Defendant filed a Petition for New Trial based on Newly Discovered Evidence, and in appeal number 70,123, Defendant appeals the trial court's

order overruling such petition. In appeal number 70,660, Defendant appeals the trial court's decision awarding attorney fees and costs to Plaintiffs. The three appeals have been consolidated under the surviving number 68,742.

## I. Defendant's Appeal

### A. *The Ownership Issue*

For its first proposition of error, Defendant contends the trial court erred in directing a verdict as to liability on the take-or-pay claims. At the close of Defendant's case, the trial court directed a verdict for Plaintiffs in accordance with the ownership interests represented in a summary introduced as PX–92. Defendant contends the trial court erred in admitting this summary as Plaintiffs' proof of ownership and in refusing to allow it to introduce evidence contradicting Plaintiffs' claims of ownership.

Each of the 34 Plaintiffs claims some right or entitlement to receive take-or-pay payments under the various contracts. A comparison of the list of Plaintiffs to the parties to the contracts indicates many of the parties obtained their interests subsequent to the execution of the contracts. According to PX–92, many Plaintiffs obtained their interests by assignment from the original signatories to the contracts. Each of the contracts contains a provision requiring notice of any assignment before such is binding upon Defendant.

At trial Robert J. Beam, an officer of RJB and Samson, attempted to prove ownership by reading a list of ownership interests. The trial court sustained Defendant's objection and ruled Plaintiffs needed to trace by assignments or some other legal instrument, the individual Plaintiffs' right to recover under the contracts. Plaintiffs then introduced PX–92, a summary of the asserted assignments showing the division of ownership in each well under each contract. Plaintiffs also presented PX–93–98 which is the list of purported assignments for each contract from Plaintiffs that had executed the contract to Plaintiffs that had not. These exhibits include a list of the Plaintiffs that originally executed the contracts, or amendments thereto, and the Plaintiffs that had received an assignment from the signatories. Beams also presented PX–99, a summary showing the aggregate ownership of Plaintiffs in each well under each contract. Based on the above-described evidence, the trial court concluded all Plaintiffs were entitled to recover and set out each Plaintiff's interest.

Defendant contends these lists of ownership interests of the Plaintiffs, introduced over its objections, do not establish Plaintiffs' interests in the wells. Defendant strenuously argues the trial court erred in denying it an opportunity to present any evidence to rebut Plaintiffs' entitlement to recover. We agree.

First, there is no evidence Plaintiffs provided Defendant with notice,[1] as required by the contracts, of any contract assignments. Nor was "a true copy" of such an assignment furnished to Defendant. Moreover, Exhibits 92–99 do not consist of either the instruments creating the working interests or the valid assignments thereof.

Although 12 O.S.1981 § 3004(4) provides that the original of a document is not required and other evidence of the contents of a writing is admissible if the writing "is not closely related to a controlling issue," PX–92–99 are not admissible because the ownership of the working interests herein is a critical issue to the determi-

---

1. Plaintiffs argue that by furnishing Defendant with title opinions and other documents after well completions, Defendant satisfied itself as to Plaintiffs' title. They claim that Defendant's issuance of a 100% division order constituted a waiver of any further notices of transfers within the group covered by the division orders. We disagree. Regardless of how proceeds are distributed, the contracts require notice as a prerequisite to any rights thereunder.

Likewise, Plaintiffs note that their aggregate ownership in each of the individual wells is not in dispute. Yet they admit they are required to prove they were signatory parties to the contract or assignees of a signatory party. They further admit the only purpose for information of their ownership within a particular well is for apportionment of damages. Inasmuch as the journal entry states Plaintiffs were entitled to recover damages "according to their interests in the gas wells ..." it is essential that proof of individual ownership, rather than aggregate ownership, be proved.

nation of ownership and apportionment of damages. Moreover, Mr. Beams testified he had not compared RJB's business records with PX–92 to ascertain whether the representations contained in PX–92 were true and correct. Thus, the above-mentioned exhibits are not admissible as business records under 12 O.S.1981 § 2803(6). They do not summarize ownership shown in public records, and are not admissible as business records under 12 O.S.1981 § 3005.

Plaintiffs also argue they are not required to prove their ownership in the wells because of a stipulation by Defendant that all parties were proper. Although in the pretrial order the parties agreed all parties were proper and correctly named or identified, Defendant did not stipulate that any of the Plaintiffs owned a working interest in any of the subject wells.

Plaintiffs respond to Defendant's argument by contending that even if they did not prove each individual Plaintiff's entitlement to recover in the proportion set by the trial court, Defendant was not prejudiced, in that this would not change the aggregate amount of Defendant's liability under the take-or-pay claim.

Although there is no dispute concerning the aggregate ownership in the wells, the trial court apportioned the damages to each individual Plaintiff. Plaintiffs admit they are required to prove they were signatory parties to the contract or assignees of signatory parties. If a plaintiff does not prove that fact, he cannot recover. It is clear a defendant is prejudiced whenever a plaintiff is not required to prove all elements of his claim, or uses inadmissible evidence to do so.

When the trial court directs a verdict, the reviewing court will examine the record, and if, upon examination it is found there is no evidence reasonably tending to support the verdict and judgment for plaintiff, such judgment will be reversed. *Green v. Safeway Stores, Inc.*, 541 P.2d 200 (Okla.1975).

We therefore hold the trial court erred in denying Defendant the right to offer evidence to rebut the claims of own-ership by the Plaintiffs and in directing a verdict in their favor on that issue. Defendant did not dispute, however, the testimony of Mr. Beams concerning his ownership interest and that of Samson's or the testimony of Wayne Tate as to his ownership interest. Such testimony was sufficient to prove ownership. Therefore, under this proposition, we do not disturb that portion of the judgment directing a verdict as to liability on the take-or-pay claims in favor of the three above-mentioned Plaintiffs; as to the thirty-one other Plaintiffs, we reverse the judgment and remand for a determination of ownership.

**B.** *Irregularities in the Conduct of the Trial*

Defendant contends it was denied a fair trial on the damage issue because of several purported irregularities in the manner in which the trial court conducted the trial. These purported irregularities will be dealt with separately.

1. Irregularity in Communications between the Trial Judge and the Jury after Submission of the Cause to the Jury.

Once the jury began deliberating, it sent a note to the trial court asking "Can we take a percent (%) of the Plaintiffs' amount (dollar and volume) and award that figure?" In response the trial court, without consulting counsel or making a record, submitted a handwritten note to the jury reading as follows:

"To the jury:
You have before you all the information I am permitted to give you.
Judge Freeman
Please return this note to court with you."

Defendant contends that pursuant to 12 O.S.1981 § 582, all communications between the trial judge and the jury, after submission of the cause, must take place in open court and in the presence of, or after notice to, the parties or their counsel. However, strict compliance with this section is not required, and no judgment will be reversed unless substantial rights of an

adverse party are affected. *Stills v. Mayor*, 438 P.2d 477 (Okla.1968). *See also Bateman v. Glenn*, 459 P.2d 854 (Okla. 1969).

Moreover, given the situation in this particular instance, the trial judge handled the matter expeditiously without affecting any party's substantial rights.

Nevertheless, Defendant claims it was substantially prejudiced because the jury returned a verdict in the full amount claimed by Plaintiffs. It submits the jury's question demonstrates it was confused with regard to the amount of damages it could award to Plaintiffs and that the confusion stemmed from Instruction No. 11, which set a minimum and maximum amount of damages for each well.

This argument is speculative and without merit; the jury had no reason to believe it could not award damages in any amount from the minimum to the maximum amount contained in Instruction No. 11. The trial court properly refused to elaborate on its instructions.

### 2. DX–46 not Submitted to the Jury for its Use during Deliberations

Defendant's damage calculation for Contract 337 was contained in DX–46. It contained 16 pages, only the first of which was submitted to the jury for its deliberation. Defendant contends it was prejudiced by the jury having all of Plaintiffs' damage calculations but not all of Defendant's. DX–46 contained the basis of Defendant's position on damages, but DX–47 contained the conclusion reached by Defendant's expert witness on the issue of damages. Moreover, its expert witness testified as to the basis for his position on the damages. His testimony informed the jury about the method and procedures used. Further, regarding the method employed, there were identical exhibits submitted for each of the other six contracts which illustrated substantially the same method. The exclusion of evidence does not warrant reversal where the matter excluded was introduced into evidence in a different form. *Shadid v. Monsour*, 746 P.2d 685 (Okla.App.1987). Defendant suffered no prejudice as a result of the partial exclusion of DX–46.

### 3. Introduction by Plaintiffs of Exhibits not Previously Provided to Defendant or Listed on the Pretrial Conference Order.

Defendant claims it is entitled to a new trial because it was prejudiced when DX–92–99, not on Plaintiffs' exhibit list, were delivered to Defendant for the first time during trial. However, Defendant itself requested further proof of ownership from Plaintiffs. Further, the trial court granted Defendant a recess to review DX–92–99, yet Defendant made no objection that the recess was not sufficient for its review. For the admission of certain evidence to constitute reversible error, it must appear that admission thereof prejudicially affected the interest of the party objecting to the admission of such evidence. *Fidelity & Cas. Co. of New York v. Hendrix*, 440 P.2d 735 (Okla.1968).

Defendant also complains of prejudice because Plaintiffs presented updated damage exhibits correcting certain errors. However, these were corrections reducing Plaintiffs' claim in favor of Defendant. A party cannot complain of error in his favor. *Tischer v. Arrington*, 193 Okla. 584, 146 P.2d 121 (1944).

Finally, Defendant argues it was denied a fair trial because of the admission of Plaintiffs' revised rebuttal exhibits not previously disclosed to Defendant before the day scheduled for rebuttal testimony. Plaintiffs' damage expert testified on rebuttal that the revisions reflected on the rebuttal exhibits were necessary because of errors pointed out by Defendant in its case. Therefore, admission of these exhibits was not prejudicial inasmuch as Defendant's expert had knowledge of the errors in the first instance. Errors not prejudicial to complaining party provide no grounds for reversal on appeal. *Missouri, K.T.R. Co. v. Caster*, 410 P.2d 67 (Okla. 1965).

### 4. Exclusion of Direct and Impeachment Evidence

Defendant further submits the trial court erred in excluding a series of well

tests performed by its expert witness and in excluding a comparison of Plaintiffs' expert's calculations to Plaintiffs' interrogatory answers.

Counsel for Defendant admitted the tests would not change any of his witnesses' calculations and that they dealt with a period after the witnesses' calculations of damages had ended. Counsel also admitted the tests were "... additional physical evidence that his [Dr. Stinson's] methodology accurately represents the decline of the well...." Counsel thus admitted the exhibits were not relevant and were also cumulative. *See National Bank of Commerce v. Fish,* 67 Okla. 102, 169 P. 1105 (Okla.1917); *Morris v. Leverett,* 434 P.2d 912 (Okla.1967).

■ Defendant further complains the trial court erred in not allowing it to introduce proffered evidence of Plaintiffs' prior take-or-pay calculations, which were sworn to by Mr. Gillespie and Mr. Beams, both officers of Samson, in interrogatories and Mr. Gillespie's deposition. It claims such evidence was admissible as impeachment evidence, prior inconsistent statements, and admissions of Plaintiffs. Mr. Gillespie did not testify, but Mr. Goad, Plaintiffs' expert did testify. Mr. Goad testified that in conducting his study, he did not rely on Mr. Gillespie's calculations. Thus, inasmuch as Mr. Gillespie's calculations were offered to impeach, they are irrelevant. The trial court did not err in excluding evidence of Mr. Gillespie's calculations.

Defendant was not denied a fair trial due to certain "irregularities in how the court conducted the trial." Accordingly, we affirm the jury verdict finding the aggregate amount of damages owed by Defendant.

### C. Petition for New Trial Based on Newly–Discovered Evidence

In light of the above discussion, it would be unnecessary to delve into the issue of whether the trial court erred in denying Defendant's petition for new trial based on newly-discovered evidence other than to determine how the interests of the remaining three plaintiffs may be affected.

■ After the jury returned its verdict in favor of Plaintiffs, Defendant's counsel sent a letter to Plaintiffs' counsel requesting confirmation of Plaintiffs' ownership interests so that new division orders could be prepared. On September 8, 1987, Plaintiffs' counsel responded by a letter which enclosed various assignments involving some of the wells and contracts at issue. The documents submitted by Plaintiffs' counsel, which were not produced during discovery, showed that judgment was entered on behalf of parties who had no ownership interest under Contract 995. It also showed three of the Plaintiffs represented in PX–92 as owning interests did not own the percentage interest set forth in the judgment in two wells covered by Contract 337. Within 30 days thereafter, Defendant then filed its petition for new trial based on the documents submitted to it by Plaintiffs' counsel.[2]

The judgment in favor of 14 Plaintiffs concerning contract 995 was based on PX–92. One of the 14 Plaintiffs is Robert Beams, one of the three remaining Plaintiffs in this appeal. However, at the time of trial, Samson, another of the three remaining Plaintiffs and assignor of the posttrial assignments, held record title to the applicable working interests.[3]

Plaintiffs assert that Samson held title as trustee for the other Plaintiffs in the wells in dispute under Contract 995, and the assignments were made after judgment because it was no longer necessary to hold the title in trust. However, there was no prior contention or evidence of such a trust

---

2. 12 O.S.1981 § 655 provides that "[W]here the grounds for a new trial could not, with reasonable diligence, have been discovered before, but are discovered more than ten (10) days after the verdict ... was rendered ... the application may be made by petition filed in the original case, as in other cases, within thirty (30) days after such discovery...."

3. Although the 14 Plaintiffs were signatories of Contract 995, apparently they assigned their interests to Samson before trial. As previously established, Plaintiffs must prove title in order to recover.

relationship at trial. The Nominee Agreement attached to Plaintiffs' answer brief purportedly as evidence of Plaintiffs' beneficial interest, was never presented to the trial court or the jury. Moreover, Plaintiffs do not attach Exhibit A, a part of the Nominee Agreement, which exhibit purportedly describes the property covered by the agreement. Thus, there is no evidence the Nominee Agreement has anything to do with the contracts in this case.

■■ The requirements for the granting of a new trial based on newly discovered evidence, are that such evidence:

1. Must have been discovered since the trial.
2. Could not have been discovered before the trial by exercise of due diligence.
3. Must be material to the issue.
4. Must not be merely cumulative to the former evidence.
5. Must not be merely to impeach or contradict the former evidence.
6. Must be such as will probably change the result in the event a new trial is granted. *Bates v. Winkle*, 208 Okla. 199, 254 P.2d 361 (1953).

Herein, the evidence of the post-trial assignments was not discovered until produced by Plaintiffs' counsel on September 8, 1987, subsequent to trial.

Second, the assignments could not have been discovered before trial by the exercise of due diligence because the assignments under Contract 995 were not made until after trial.

Third, the post-trial assignments are material to the issue inasmuch as they deal with the parties' ownership interests and corresponding right to recover damages.

Fourth, the post-trial assignments are not cumulative evidence because at trial Defendants were prevented from presenting their evidence (testimony of Kyle Thomas) in response to DX–92–99.

Fifth, the evidence of post-trial assignments is not merely contradictory because it may tend to prove facts which, in turn, could produce a different result in a new trial. *Ralston v. Tucker*, 324 P.2d 525 (Okla.1958).

Sixth, if a new trial is granted, evidence of the post-trial assignments could lead one to believe the result could probably change because certain Plaintiffs received a judgment when they had no ownership interest at the time of trial. Had this evidence been presented at trial, there could have been a change in the judgment.

Accordingly, the post-trial evidence meets the requirements for the granting of a new trial. Because evidence shows Robert Beams owned no working interest in Contract 995 at the time of trial, and because Samson was the record owner of the working interest set forth in Contract 995, this cause is reversed and remanded with directions to the trial court to adjust the amount of these two Plaintiffs' damage awards consistent with the aforementioned discussion.[4] Because no evidence has been presented which would indicate a lack of ownership or an ownership amount different from that presented at trial, the ownership interest of Wayne Tate remains unaffected by the newly-discovered evidence.

### D. *Defense of Commercial Impracticability*

■■ Defendant argues the trial court erred in striking its defenses of commercial impracticability and impossibility of performance to the take or pay claims. In its answer it alleges the "performance sought by Plaintiffs has been rendered impractical and impossible without the fault of CIG, due to the drastic decline in demand for natural gas. The collapse of the market was not within the contemplation of the parties at the time of making the gas pur-

4. Defendant also contends a new trial should be granted based on newly-discovered evidence showing that three of the Plaintiffs represented to own interests in DX–94 did not own the percentage interest set forth in the judgment in two wells covered by Contract 337. However, because the judgment has been reversed and remanded for a determination of record ownership concerning these three Plaintiffs (and others), it is unnecessary to glean the newly-discovered evidence with regard to the two wells covered by Contract 337.

chase contracts." It contends the trial court should have allowed it the opportunity to present facts supporting its defenses.

In *Golsen v. ONG Western, Inc.*, 756 P.2d 1209 (Okla.1988), the trial court determined a decline in the demand for gas triggered the Force Majeure Clause in a gas purchase contract. However, the Supreme Court found "that the fact no market exists for gas at or above ONG's contract price does not establish failure of markets." Absent a specific contract provision creating a cognizable excuse for performance, as a matter of law, Defendant is not excused because of a decrease in the market demand for natural gas. Thus, the parties to the contract are assumed to have allocated the risk in a take-or-pay clause. The trial court did not err in striking Defendant's defenses.[5]

### E. *Prejudgment Interest*

■ The trial court granted Plaintiffs' motion for prejudgment interest and awarded them $465,481.18 based on 23 O.S. 1981 § 6. Defendant argues the central dispute is whether Plaintiffs' claims were liquidated, as required by § 6. On the other hand, Plaintiffs contend that 23 O.S. 1981 § 22 is controlling. Section 22 provides "the detriment caused by the breach of an obligation to pay money only is deemed to be the amount due by the terms of the obligations with interest thereon." Plaintiffs submit the parties' contracts obligated Defendant to pay money only to Plaintiffs. We disagree.

The contracts in question set forth various obligations, including the obligation to take certain quantities of gas or pay for quantity not taken. The contracts further provide for recoupment rights for payment of take-or-pay and so do not constitute an obligation to pay money only. Any payment of money carries with it a reciprocal obligation to deliver gas.

Section 23 O.S.1981 § 6 is the controlling statute. Under § 6 "prejudgment interest will not be allowed unless the amount of recovery is liquidated or capable of ascertainment by calculation or resort to well-established market values." Herein, the trial focused around the proper calculation of take-or-pay. The jury had to determine from conflicting evidence and experts' opinions the amount of damages. *Withrow v. Red Eagle Oil Co.*, 755 P.2d 622 (Okla. 1988). A claim is unliquidated "where a trial is necessary to determine the amount due." *Smith v. Owens*, 397 P.2d 673 (Okla. 1965). Thus, because the claims are unliquidated, it was error for the trial court to award Plaintiffs' prejudgment interest. Therefore, that portion of the judgment awarding prejudgment interest is reversed.

## II. The Counter–Appeal

### A. *Makeup Volumes*

■ Plaintiffs contend the trial court erred in submitting the issue of makeup volumes to the jury. The plain language of paragraph 4.2 permits Defendant to make up gas which is "paid for."[6] The language

---

**5.** In its reply brief, Defendant suggests that Plaintiffs were on notice, under the Pleading Code, that its allegations entitled it to rely on multi-faceted reasons for changes in the market conditions. It claims it was entitled to present facts showing that its performance was rendered commercially impracticable by events that were beyond its control and which the parties could not have reasonably foreseen.

However, Defendant's contention that Plaintiffs were on notice, under the Pleading Code, that it was entitled to rely on multi-faceted reasons for changes in the market conditions, may not be considered by this Court when raised for the first time in a reply brief on appeal. *McCorkle v. Great Atlantic Inc. Co.*, 637 P.2d 583 (Okla. 1981).

**6.** Paragraph 4.2 of the contracts provides as follows:

"FAILURE OF BUYER TO TAKE CONTRACT QUANTITY—If during any 1–year period, commencing with the 1st day of the month in which initial delivery is made from each well, Buyer shall fail to take the Contract Quantity of gas from such well, then Buyer shall pay Seller on or before the 20th day of the 2nd month of the next following year for that quantity of gas which is equal to the difference between the Contract Quantity and buyer's actual take during such period ... During the 5 years next succeeding a year in which Buyer has failed to take the gas *so paid* for, all gas taken by Buyer from Seller which is in excess of the Contract Quantity of gas for the current year shall be known as Make-up Gas and shall be delivered without charge to Buyer until such excess equals the amount of gas previously *paid for* but not taken, ...".

does not provide for any makeups for volumes not paid for. It is undisputed Defendant made no deficiency payments. In Instruction No. 11, the trial court gave what appears to be a proper instruction concerning the measure of damages for breach of a take-or-pay contract. However, in the journal entry of judgment, the trial court ruled that Defendant, upon payment of damages, was entitled to make up volumes of natural gas from each of the wells identified in the seven contracts.[7] Recently, in *RJB Gas Pipeline Company v. Colorado Interstate Gas Company*, 813 P.2d 1 (Okl. App.1989), this Court held that because CIG made no deficiency payments at all, it had no right of recoupment after it has been assessed damages for breach of contract. The recoupment or make-up provision is an important part of the take-or-pay clause. The purpose of the take-or-pay provision is to allow the pipeline to prepay for volumes of gas it cannot take in a given year and recoup or make-up the payment through deliveries of gas in the future. All of the contracts allow CIG to recoup take-or-pay deficiencies from production in excess of contract quantity in the five years subsequent to a deficiency. The contracts also provide that any unrecouped take-or-pay be refunded to CIG if the seller cannot deliver the gas because the well is not capable of producing or is disconnected under any of the options granted in the contract.

The contracts allow for recoupment "during the 5 years next succeeding a year in which Buyer has failed to take the gas *as paid for*." Pursuant to the contracts, a buyer has 5 years from the date of payment of the deficiency to recoup its gas. ▮ In a gas purchase contract, take-or-pay provisions and recoupment provisions are special and are designed to meet the needs of two sophisticated business en-

tities who are deemed to have allocated the risks involved in these types of contracts. As such, these provisions must be strictly construed. Because CIG made no deficiency payments at all, it has no right of recoupment after it has been assessed damages for breach of contract. By paying the judgment, CIG is not paying for the gas, it is paying damages for breach of contract.

Accordingly, that portion of the judgment on the jury verdict awarding damages for Defendant's breach of contract is affirmed in the aggregate amount of $4,147,-245.49. However, we reverse that portion of the judgment allowing CIG to recoup the gas.

## B. *Plaintiffs' Prayers for Punitive Damages*

Plaintiffs assert the trial court erred in striking their prayers for punitive damages and in refusing to admit evidence in support of their tort claims. Their tort claims and prayers for punitive damages were based on Defendant's alleged violation of an implied duty to deal fairly and in good faith with Plaintiffs and its alleged attempted economic coercion of Plaintiffs.

▮ In *Rodgers v. Tecumseh Bank*, 756 P.2d 1223 (Okla.1988), the Oklahoma Supreme Court declined to extend the implied duty of good faith and fair dealing beyond contracts of insurance to contracts for commercial loans.[8] Likewise, this Court declines to extend the duty of good faith and fair dealing to take-or-pay gas purchase contracts.

▮ Plaintiffs' tort claim was also based upon the doctrine of economic coercion. In *Centric Corp. v. Morrison–Knudsen Company*, 731 P.2d 411 (Okla. 1986), the Supreme Court declined to determine whether Oklahoma recognized this

---

7. The jury found Plaintiffs were entitled to recover from Defendant, as damages for breach of contract, the total sum of Four Million One Hundred Forty–Seven Thousand Two Hundred Forty–Five and 49/100 Dollars. ($4,147,-245.49).

8. Plaintiffs also quote language in *Hinson v. Cameron*, 742 P.2d 549 (Okla.1987) which reads

that the general principle of good faith and fair dealing is infused by force of law into ever contract. However, in a more recent employment law case, the Supreme Court held that "there is no implied covenant of good faith and fair dealing that governs the employer's decision to terminate in an employment-at-will contract." *Burk v. K–Mart*, 770 P.2d 24 (Okla.1989).

doctrine as an independent tort. It determined only that Oklahoma has long recognized economic duress as a valid basis for avoiding a mutual release and settlement agreement. The theory of economic coercion is not an actionable tort upon which to base recovery. The trial court did not err in striking, as a matter of law, Plaintiffs' prayers for punitive damages.

### III. Attorney Fees and Costs

#### A. *Attorney Fees*

■ Defendant argues the trial court erred in awarding attorney fees to Plaintiffs. Initially, it submits that because oil and gas do not constitute goods under Oklahoma common law until they are severed from the ground, Plaintiffs were erroneously awarded damages for gas which had not yet been produced. Thus, it asserts this matter is not an action on a contract for the sale of goods within the meaning of 12 O.S.1981 § 936. We disagree. 12A O.S.1981 § 2–106(1) provides that a contract for sale includes both a present sale of goods and a contract to sell goods at a future time. A "sale" consists in the passing of title from the seller to the buyer for a price. 12A O.S.1981 § 2–401. A "present sale" means a sale which is accomplished by the making of the contract. Thus, the distinction between a "contract to sell" and a "contract for sale" is relevant only in the determination of when title passes from seller to buyer, an issue not before this Court. The action falls within the purview of § 936 as one to recover on contracts relating to the purchase or sale of goods, and as prevailing party Plaintiff is entitled to attorney fees.

■ Next, Defendant contends the trial court erred in failing to reduce the attorney fee claims for services spent on Plaintiff's unsuccessful claims for anticipatory breach and punitive damages. Inasmuch as Defendant prevailed on both claims, and there is no statute for recovery of attorney fees in tort actions, the trial court should have apportioned attorney fees for its unsuccessful claims. *See Sisney v. Smalley*, 690 P.2d 1048 (Okla.1984).

But Plaintiffs argue that because they were awarded only $350,000 instead of the total number of hours multiplied by hourly rates ($447,410.50), it appears the trial court attempted to apportion the number of hours expended on successful and unsuccessful claims. However, the record contains no finding that the trial court made such an apportionment.

■ Defendant further asserts the trial court improperly awarded attorney fees which included fees for law clerks and legal assistants. Attorney fees were awarded pursuant to 12 O.S.1981 § 936. There is no reference in the statute for compensation for non-attorneys. The trial court erred in awarding compensation attributable to time generated by legal assistants and law clerks.

■ As part of its counter-appeal, Plaintiffs claim the trial court abused its discretion by failing to award them an incentive fee or bonus in addition to their attorneys' hourly-based fees. They set forth the criteria exposed in *State ex rel. Burk v. City of Oklahoma City*, 598 P.2d 659 (Okla.1979)[9] which indicate whether an incentive fee or bonus is appropriate in a given case. However, Defendant's expert witness testified as to why an incentive fee was not appropriate under each of the criteria. Pursuant to the evidence presented, the trial court did not abuse its discretion in not awarding Plaintiffs an incentive fee. *See Hester v. Hester*, 663 P.2d 727 (Okla. 1983).

In light of our partial reversal of this cause, the trial court's decision awarding attorney fees is reversed and remanded to

---

**9.** (1) Time and labor required; (2) novelty and difficulty of the questions; (3) skill requisites to perform the legal service properly; (4) preclusion of other employment by the attorney due to acceptance of the case; (5) customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) amount involved and results obtained; (9) experience, reputation and ability of attorneys; (10) "undesirability of the case (i.e., risk of non-recovery); (11) nature and length of the professional relationship with the client; and (12) awards in similar cases."

the trial court with directions to redetermine the amount of attorneys fees consistent with these views.

### B. *Costs*

 Defendant complains the trial court awarded Plaintiffs $10,000 in expert witness fees—$7,000 for the services of Mr. Goad and $3,000 for the services of Mr. Miller. Section 12 O.S.1989 § 3226(B)(3)(c) authorizes the trial court to require a party seeking discovery to pay the opposing party's experts "a reasonable fee for time spent in responding to discovery...."

Plaintiffs do not dispute that the October 1, 1986 deposition taken of Mr. Goad by Defendant related to a companion case, not the instant matter. The record reveals the only other depositions were on January 30, 1987 and February 5, 1987 for which he charged a total of $850.

With regard to Mr. Miller, his invoices state they are in preparation of litigation support and expert testimony for depositions. However, Plaintiffs presented no evidence demonstrating the amount of fees incurred by Mr. Miller in connection with his deposition taken by Defendant. The burden of proof is on the moving parties to show a basis for compensation of witness fees for which they seek recovery. *Sloan v. Owen*, 579 P.2d 812 (Okla.1977). Plaintiffs failed to prove entitlement to any more than $850 in expert witness fees. The trial court abused its discretion in awarding Plaintiffs $10,000 in expert witness fees.

Moreover, Defendant complains the trial court erred in failing to award it its reasonable expert witness fees incurred in connection with the depositions of its expert witnesses taken by Plaintiffs.

Thus, that portion of the judgment awarding costs for expert witness fees pursuant to 12 O.S.1989 § 3226(B)(3)(c), which is not a prevailing party statute, is reversed and remanded with directions for a redetermination of each party's entitlement to such costs and the amount thereof.

Defendant also complains Plaintiffs were not entitled to recover $2,946 in costs awarded for exhibits, charts and other copies used by Plaintiffs at trial. Plaintiffs, on the other hand, contend in their counterappeal their supplemental motion for costs indicated additional expenses of $1,396.44 above and beyond the $2,946.00 awarded them. We disagree. The taxing of costs is discretionary with the trial court, and where there is no apparent abuse of such discretion, its order will be affirmed on appeal. *Pierson v. American National Bank of Shawnee*, 325 P.2d 426 (Okla. 1958).

 Lastly, Plaintiffs argue their expenses for legal research on computerized legal research systems should have been taxed as costs. Additionally, they assert the trial court erroneously allowed only $94.00 of expenses for filing fees and process servers which totalled $133.50. Neither of these latter two contentions was raised in Plaintiff's initial brief on counterappeal. A contention may not be raised for the first time in a reply brief on appeal. *McCorkle v. Great Atlantic Insurance Co.*, 637 P.2d 583 (Okla.1981).

Accordingly, the decisions of the trial court in the three consolidated appeals are AFFIRMED IN PART, REVERSED IN PART AND REMANDED WITH DIRECTIONS.

BAILEY and ADAMS, JJ., concur.